## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS<br><br>1660 L St. NW, 12th Floor<br>Washington, DC 20036<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS and UNITED STATES DEPARTMENT OF JUSTICE<br><br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>CIVIL ACTION NO. 14-CV-269<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for declaratory, injunctive, and other appropriate relief, and seeking the expedited processing and release of agency records requested by Plaintiff, the National Association of Criminal Defense Lawyers ("NACDL"), from the Executive Office for United States Attorneys ("EOUSA") and the United States Department of Justice ("DOJ") (collectively, "Defendants").

2.     Plaintiff brings this action to compel Defendants to produce or make available for public inspection and copying the Office of Legal Education publication entitled "Federal Criminal Discovery."  On information and belief, this publication is generally referred to as the "Federal Criminal Discovery Blue Book" (the "Blue Book").

3.     DOJ created the Blue Book in response to the public furor over its flawed prosecution of the late Senator Ted Stevens, whose conviction was vacated after post-trial

investigations revealed that prosecutors had withheld significant exculpatory evidence from the

defense.  In a series of Congressional hearings convened to address "the egregious misconduct

by prosecutors in the *Stevens* case," Letter from John Cornyn and Sheldon Whitehouse, U.S.

Senators, to Eric Holder, U.S. Attorney General (May 30, 2012), available at

http://www.judiciary.senate.gov/resources/transcripts/upload/060612Record Submission-

Leahy.pdf, DOJ asserted that federal legislation was unnecessary to prevent future  discovery

abuses because it had instituted various internal reforms.  During the hearings, DOJ asserted it

had implemented "rigorous enhanced training" to ensure that "prosecutors and agents [have] a

full appreciation of their responsibilities" under federal law.  *Statement for the Record from the*

*Department of Justice: Hearing on the Special Counsel's Report Before on the Prosecution of*

*Senator Ted Stevens Before the S. Comm. on the Judiciary*, 112th Cong. 3 (2012) ("*Statement for*

*the Record*").  As part of this effort, DOJ stated that it had created a "Federal Criminal Discovery

Bluebook" that "comprehensively covers the law, policy, and practice of prosecutors' disclosure

obligations" under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150

(1972), and their progeny.  *Id.* at 4.  According to DOJ, the Blue Book was "distributed to

prosecutors nationwide in 2011" and "is now electronically available on the desktop of every

federal prosecutor and paralegal."  *Id.*

    4.    On December 20, 2012, NACDL filed a FOIA request with EOUSA seeking

disclosure of the Blue Book.  Disclosure of the Blue Book is vital to ensuring (1) that DOJ has in

fact implemented the reforms it promised after the *Stevens* case, and (2) that such reforms are

sufficient to prevent a recurrence of the same types of discovery abuses that marred the *Stevens*

prosecution.  Restoring public confidence in the integrity of federal prosecutions requires full

transparency regarding the policies and procedures DOJ has adopted with respect to criminal

discovery.  Indeed, because *Brady* violations are, by their very nature, difficult to discover, the public has a particularly compelling interest in knowing the steps DOJ has taken to prevent such violations.  Moreover, because DOJ claimed that distribution of the Blue Book—a key component of its post-*Stevens* internal reforms—obviated the need for any discovery legislation, it should not now be permitted to shield the Blue Book from public scrutiny.

5.      On February 28, 2013, EOUSA improperly denied NACDL's FOIA request in full.  EOUSA cited 5 U.S.C. § 552(b)(5) and (b)(7)(E) as its basis for withholding the Blue Book, but offered no further details or information explaining its decision.  On April 26, 2013, NACDL filed an administrative appeal.  On June 25, 2013, DOJ denied the appeal in full, this time citing only 5 U.S.C. § 552(b)(5).

6.      The Blue Book is either a "statement[] of policy" or an "administrative staff manual[] . . . that affect[s] a member of the public."  5 U.S.C. § 552(a)(2).  Accordingly, Defendants are required to make the Blue Book "available for public inspection and copying" under 5 U.S.C. § 552(a)(2).  Alternatively, Defendants are required to produce the Blue Book in response to NACDL's proper FOIA request under 5 U.S.C. § 552(a)(3).  Because the Blue Book is not exempt from disclosure under any of the exemptions listed under 5 U.S.C. § 552(b)(1)–(9), Defendants' failure to produce the Blue Book or make it available for public inspection and copying violates FOIA.

7.      Having exhausted its administrative remedies, NACDL now brings this lawsuit to compel Defendants to produce the Blue Book and to defend the public's right "to know what [its] Government is up to."  *NARA v. Favish*, 541 U.S. 157, 171 (2004) (internal quotations and citations omitted).

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under 5 U.S.C.

§ 552(a)(4)(B), 5 U.S.C. § 704, and 28 U.S.C. § 1331.

9.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

10.      Plaintiff NACDL is a professional bar association organized as a 501(c)(6) non-

profit corporation that is dedicated to promoting a rational and humane criminal justice policy for

America.  Its 10,000 direct members and 40,000 state, local, and international affiliate members

include public defenders, private criminal defense lawyers, active-duty military defense counsel,

judges, and law professors who support NACDL's mission to promote the proper and fair

administration of criminal justice; ensure justice and due process for persons accused of crime;

and foster the integrity, independence and expertise of the criminal defense profession.

11.      A significant aspect of NACDL's mission is to ensure that the American public is

informed about the conduct of its government in matters that affect criminal justice.  As part of

this effort, NACDL publishes a monthly magazine called "The Champion" that features timely

and informative articles on the latest developments in criminal law, procedure, and policy.  The

magazine directly circulates to approximately 10,000 recipients, including lawyers, law libraries,

law professors, federal and state judges, members of the news media, and members of the public

interested in the administration of justice.  NACDL also publishes a monthly electronic

newsletter and daily news brief, both of which are distributed to NACDL members via e-mail.

Additionally, NACDL regularly issues news releases to the press and public that are widely

disseminated through e-mail, Facebook, and Twitter, and posted on NACDL's website,

www.nacdl.org.  NACDL has a long history of publishing reports about governmental activity

and criminal justice issues that are broadly circulated and available to the public at little or no

cost, including manuals and government reports obtained through FOIA.  *See, e.g.*, *Nat'l Ass'n of*

*Criminal. Def. Lawyers v. U.S. Dep't of Justice*, 182 F.3d 981 (D.C. Cir. 1999).

12.     Defendant DOJ is a Department of the Executive Branch of the United States

government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  DOJ is in possession

and/or control of the records requested by NACDL which are the subject of this action.

13.     Defendant EOUSA is a component of DOJ.  It is responsible for providing

administrative support for the 93 United States Attorneys located throughout the 50 states, the

District of Columbia, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin

Islands.  EOUSA is an agency within the meaning of 5 U.S.C. § 552(f)(1) and is in possession

and/or control of the records requested by NACDL which are the subject of this action.

## STATUTORY FRAMEWORK

14.     The Freedom of Information Act "reflects 'a general philosophy of full agency

disclosure' and protects 'the public's right to know the operations of its government.'"  *Jordan v.*

*U.S. Dep't of Justice*, 591 F.2d 753, 755 (D.C. Cir. 1978) (en banc) (quoting S.Rep. No. 813,

89th Cong., 1st Sess. 3, 8 (1965)). "The basic purpose of FOIA is to ensure an informed

citizenry, vital to the functioning of a democratic society, needed to check against corruption and

to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437

U.S. 214, 242 (1978).

15.     "The first part of the statute—subsection (a) —mandates the disclosure of records

by government agencies.  It is divided into three parts, setting forth three methods by which

agencies must make information available to the public." *Jordan*, 591 F.2d at 755–56.

16.     Paragraph (a)(1) requires agencies to publish certain types of material in the Federal Register.  5 U.S.C. § 552(a)(1).

17.     Paragraph (a)(2) requires agencies to make certain other types of material available for public inspection and copying.  5 U.S.C. § 552(a)(1).  Specifically, under 5 U.S.C. § 552(a)(2), "[e]ach agency, in accordance with published rules, shall make available for inspection and copying (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases; (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] (C) administrative staff manuals and instructions to staff that affect a member of the public . . . ."

18.     Paragraph (a)(3)—sometimes described as a "catch-all" provision, *Ginsburg, Feldman & Bress v. Fed. Energy Admin.*, 591 F.2d 717, 740 (D.C. Cir. 1978)—requires agencies to disclose, upon request, all other records not already subject to disclosure under paragraphs (a)(1) and (a)(2).  The agency must make the records "promptly available to any person" as long as the request "reasonably describes such records" and is made in accordance with specified procedures.  5 U.S.C. § 552(a)(3).

19.     The second part of the statute—subsection (b)—exempts from disclosure nine specific categories of information.  *See* 5 U.S.C. § 552(b)(1)–(9).  "These exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner v. U.S. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (citations and internal quotation marks omitted).  FOIA's "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  "That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."  *Id.*

20.     Any member of the public may make a request for records to any agency of the United States.  *See generally Favish*, 541 U.S. at 172.  An agency that receives a FOIA request must respond in writing to the requestor within 20 business days.  5 U.S.C. § 552(a)(6)(A)(i).  The agency must inform the requestor whether or not it intends to comply with the request, provide reasons for its determination, and notify the requestor of his right to appeal any adverse determination.  *Id.*  If an agency claims a statutory exemption, it is required to identify the exemption under which the withholding is made, provide any reasonably segregable portion of non-exempt information to the requestor, and specify the amount of information withheld.  5 U.S.C. § 552(b).

21.     A FOIA requestor who has been denied records may appeal the denial to the agency.  The agency must make a determination on the appeal within 20 business days.  5 U.S.C. § 552(a)(6)(A)(ii).

22.     "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990).  A FOIA requestor who has completed the administrative appeal process following an agency's denial of his FOIA request has exhausted his administrative remedies.  *See, e.g.*, *id.*; *Jean-Pierre v. Federal Bureau of Prisons*, 880 F. Supp. 2d 95, 104 (D.D.C. 2012).

23.     A district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  A district court has jurisdiction to compel DOJ to make the Blue Book available for public inspection and copying under 5 U.S.C. §§ 704 and 706.

## FACTUAL ALLEGATIONS

### Prosecutorial Misconduct in the Trial of Senator Ted Stevens

24.     On July 29, 2008, a District of Columbia grand jury returned a seven-count indictment charging then-United States Senator Theodore F. Stevens with failure to report the receipt of benefits and other items of value on his United States Senate Public Financial Disclosure Form.  U.S. Dep't of Justice, Office of Prof'l Responsibility, Report: Investigation of Allegations of Prosecutorial Misconduct in United States v. Theodore Stevens, Crim. No. 08-231 (D.D.C. 2009) (EGS) 1 (2011), http://www.leahy.senate.gov/imo/media/doc/052412-081511Report.pdf ("OPR Report").  Following a trial in the fall of 2008, a jury found Senator Stevens guilty on all counts.  *Id.* at 17.

25.     Months after the trial, a new team of prosecutors assigned to conduct post-trial litigation discovered that significant exculpatory and impeachment evidence had been withheld from Stevens' defense team in violation of federal law.  In light of this discovery, DOJ moved to set aside the verdict and to dismiss the indictment.  Report to Hon. Emmet G. Sullivan of Investigation Conducted Pursuant to the Court's Order, dated April 7, 2009 at 32, *In Re Special Proceedings*, No. 09-0198 (EGS) (D.D.C. Mar. 15, 2012), http://www.dcd.uscourts.gov/dcd/sites/www.dcd.uscourts.gov.dcd/files/Misc09-198.pdf ("Schuelke Report").  United States District Judge Emmet G. Sullivan granted the government's motion on April 7, 2009.

26.     An investigation conducted by a court-appointed Special Counsel concluded that "[t]he investigation and prosecution of U.S. Senator Ted Stevens were permeated by the systematic concealment of significant exculpatory evidence which would have independently corroborated Senator Stevens' defense and his testimony, and seriously damaged the testimony and credibility of the government's key witness."  Schuelke Report at 1.  An independent

investigation conducted by DOJ's Office of Professional Responsibility similarly concluded that

the prosecution had violated its obligations under *Brady* and *Giglio* by failing to disclose

significant exculpatory and impeachment evidence to the defense.  OPR Report at 24–28.

### Reaction to the *Stevens* Trial and DOJ's Response

27.      Exposure of the widespread discovery abuses that had marred the *Stevens*

prosecution sparked a national outcry.  Dozens of major news outlets closely followed the story

and issued calls for reform.  *See, e.g.*, Editorial: *Justice After Senator Stevens*, The New York

Times, March 18, 2012, available at http://www.nytimes.com/2012/03/19/opinion/justice-after-

senator-stevens.html?_r=0; *Federal prosecutors need to play fair with evidence*, Washington

Post, March 18, 2012, available at http://www.washingtonpost.com/opinions/federal-

prosecutors-need-to-play-fair-with-evidence/2012/03/16/gIQADXTMLS_story.html.  Senator

Lisa Murkowski introduced legislation—the "Fairness in Disclosure of Evidence Act," S.

2917—designed to create a national standard for disclosure of exculpatory evidence to

defendants in federal cases.  *See* Press Release, United States Senator Lisa Murkowski, Senator

Introduces Bipartisan Bill to Enforce Ethical Legal Prosecutions, Mar. 15, 2012, available at

www.murkowski.senate.gov/public/index.cfm?p=PressReleases&ContentRecord_id=5b41d548-

ab47-464f-a627-8b1702b75145.  The American Bar Association endorsed Senator Murkowski's

proposed legislation and called for "a clear and uniform standard for disclosure of favorable

evidence by the prosecution in federal criminal cases."  *See* Letter from Thomas M. Susman,

Director of the ABA's Government Affairs Office, to Chairman Leahy and Ranking Member

Grassley, June 5, 2012, attaching "A Call to Congress to Reform Federal Criminal Discovery,"

available at http://www.judiciary.senate.gov/resources/transcripts/upload/

060612RecordSubmission-Leahy.pdf.

28.     In a series of three Congressional hearings convened to address misconduct in the

*Stevens* case and proposed discovery reforms, DOJ asserted that federal discovery legislation

was unnecessary because it had instituted a series of internal reforms designed to prevent future

discovery abuses.  Among other things, DOJ claimed it had "created and distributed . . . to

prosecutors nationwide" a "Federal Criminal Discovery Blue Book" that "comprehensively

covers the law, policy, and practice of prosecutors' disclosure obligations." *Statement for the

Record* at 4.  The Blue Book, DOJ asserted, was an important part of its effort to implement

"rigorous enhanced training" and "provide[] prosecutors with key discovery tools such as online

manuals and checklists." *Id.* at 3.  It was designed, DOJ claimed, to ensure that "prosecutors and

agents [have] a full appreciation of their responsibilities" under federal law. *Id.* at 1.  According

to DOJ, the Blue Book is now "electronically available on the desktop of every federal

prosecutor and paralegal." *Id.* at 4.

### Public Need for Disclosure of the Blue Book

29.     The prosecution violates a defendant's right to due process if it withholds

evidence that is favorable to the defense and material to either guilt or punishment. *Smith v.

Cain*, 132 S. Ct. 627, 630 (2012).  This is true irrespective of the good faith or bad faith of the

prosecution and regardless of whether a defendant requests disclosure of such evidence. *Brady*,

373 U.S. at 87; *United States v. Agurs*, 427 U.S. 97, 107 (1976).

30.     By DOJ's own admission, "even a single lapse" in the prosecution's compliance

with its discovery obligations "could call the integrity of our criminal justice system into

question" with "devastating consequences." *Statement for the Record* at 2–3.  It is therefore of

vital importance that the public be fully informed regarding the policies and procedures DOJ has

implemented to ensure that exculpatory evidence is disclosed to the defense.

31.     This is especially true given that *Brady* violations, by their very nature, are difficult to discover.  As Representative Robert C. Scott observed in a statement to Congress, "[g]enerally a defendant will have no way to know of or learn of exculpatory evidence known to the government unless the government discloses it."  Prosecution of Former Senator Ted Stevens: Hearing Before the H. Comm. on the Judiciary, 112th Cong. 4 (2012) (Statement of Rep. Robert C. "Bobby" Scott), available at http://www.gpo.gov/fdsys/pkg/CHRG-112hhrg73861/pdf/CHRG-112hhrg73861.pdf.  Thus, only full transparency will restore public confidence that prosecutors are fulfilling their obligations and administering justice fairly.

32.     As one federal judge recently wrote, "*Brady* violations have reached epidemic proportions in recent years."  *United States v. Olsen*, 737 F.3d 625, 631 (9th Cir. 2013) (Kozinski, J., dissenting from denial of petition for rehearing en banc).  "[T]he federal and state reporters bear testament" to the fact that prosecutorial discovery abuse remains an ongoing problem even after the *Stevens* trial.  *Id.* (collecting cases).  The public requires access to the Blue Book to ensure (1) that DOJ has implemented the reforms it promised after the *Stevens* case, and (2) that those reforms are sufficient to safeguard each defendant's right to due process.  Moreover, since DOJ relied on the Blue Book in resisting calls for remedial legislation, it cannot now be heard to complain that the Blue Book should not be available for public inspection.

**FOIA Request**

33.     On December 20, 2012, NACDL served EOUSA with a FOIA request for "the Office of Legal Education publication entitled 'Federal Criminal Discovery.'"  *See* Ex. A at 1.  The request specified that, on information and belief, this publication "was published and/or distributed in March 2011 and may also be referred to as The Federal Criminal Discovery Blue Book."  *Id.*

34.     NACDL sought expedited processing of its request and a waiver of fees.

**Exhaustion of Administrative Remedies**

35.     On February 28, 2013, EOUSA denied NACDL's FOIA request in full.  *See* Ex. B.  EOUSA cited, without elaboration, 5 U.S.C. § 552(b)(5) and (b)(7)(E) as its basis for withholding the Blue Book.  EOUSA offered no further details or information explaining its decision.

36.     On April 26, 2013, NACDL sent DOJ an administrative appeal letter challenging EOUSA's decision to withhold the Blue Book.  *See* Ex. C.  In the letter, NACDL asserted that EOUSA is required to produce the Blue Book because it does not fall under either of the claimed exemptions.  NACDL also explained why the claimed exemptions do not apply.

37.     By letter dated May 17, 2013, DOJ acknowledged receipt of NACDL's appeal. *See* Ex. D.

38.     On June 25, 2013, DOJ's Office of Information Policy ("OIP") denied NACDL's appeal.  *See* Ex. E.  OIP cited only 5 U.S.C. § 552(b)(5) as the basis for its decision, specifically referencing the "attorney work-product privilege."  *Id.* at 1.

**The Blue Book is Not Exempt From Disclosure Under Section 552(b)(5)**

39.     The Blue Book is not exempt from disclosure under section 552(b)(5) ("Exemption 5") as an "inter-agency or intra-agency memorandum[] or letter[] which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 shields from disclosure "those documents, and only those documents, normally privileged in the civil discovery context," *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including documents protected under "the attorney-client privilege, the attorney work-product privilege, [and] the executive 'deliberative process'

privilege," *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (citations omitted).  None of these privileges applies in this case.

40.     The attorney-client privilege does not shield the Blue Book from disclosure because the Blue Book does not include "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

41.     The attorney-client privilege also does not shield the Blue Book from disclosure because, on information and belief, the Blue Book has been widely disseminated throughout DOJ, including to the Associate Attorney General; the Assistant Attorneys General for the Criminal Division, National Security Division, Civil Rights Division, Antitrust Division Environmental and Natural Resources Division, and Tax Division; to all United States Attorneys; and to officials in the Federal Bureau of Investigation, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Marshals Service and the Bureau of Prisons.  *See* Memorandum from James M. Cole, Deputy Attorney General, to the Associate Attorney General, *et al.*, 4 n.4, 6 (Mar. 30, 2011), available at http://www.fd.org/docs/select-topics/discovery/doj-memo-on-preservation-and-discovery-of-electronic-communications.pdf?sfvrsn=4 (citing the "Discovery BlueBook" sections on "Opinion or Reputation Evidence Regarding Veracity" and "Information Not Subject to Disclosure by the Government").  And, as DOJ stated, the Blue Book was distributed "nationwide" to "every federal prosecutor and paralegal." *Statement for the Record* at 4.  Such broad dissemination would separately defeat any claim to confidentiality that Defendants might raise.  *See Coastal States*, 618 F.2d at 863.

42.     Nor does the attorney work-product privilege shield the Blue Book from disclosure. *See PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993). "The 'testing question' for the work-product privilege . . . is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (internal quotation marks omitted). Since "'the prospect of future litigation touches virtually any object of' a prosecutor's attention," this Circuit has rejected an overbroad reading of the privilege that could "preclude almost all disclosure from an agency with substantial responsibilities for law enforcement." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991). Rather, it has "drawn a line between 'neutral, objective analyses of agency regulations' and 'more pointed documents' that recommend 'how to proceed further with specific investigations' or 'advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome.'" *American Immigration Council v. DHS*, 905 F. Supp. 2d 206, 221–22 (D.D.C. 2012) (quoting *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987) ("*Delaney*")). "'[N]eutral, objective analyses of agency regulations [resembling] question and answer guidelines which might be found in an agency manual'" that "flesh[] out the meaning of the [law]" do not qualify for protection under the work-product privilege. *Delaney*, 826 F.2d at 127 (quoting *Coastal States*, 617 F.2d at 863); *see also Jordan*, 591 F.2d at 775 (refusing to accord work-product protection to a manual "contain[ing] specific guidelines and criteria which Assistant United States Attorneys [were] expected to consider in handling certain offenses" and a set of guidelines "set[ting] forth the criteria for eligibility" in a pre-trial diversion program because they were not "prepared in anticipation of a particular trial" and "[did] not include

factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to any on-going or prospective trial"); *Judicial Watch, Inc. v. United States Dep't of Homeland Security*, 926 F. Supp. 2d 121, 142–43 (D.D.C. 2013) (holding that the work-product privilege does not exempt from disclosure documents "promulgated as 'general standards' to instruct [agency] attorneys in determining whether to exercise prosecutorial discretion in specific categories of cases").

43.     Based on DOJ's own public statements regarding the reasons for the Blue Book's creation and its anticipated use, the Blue Book is an agency manual that contains "neutral, objective analyses" of prosecutors' legal obligations under *Brady* and *Giglio* and provides general guidance regarding how prosecutors should comply with the law.  *Delaney*, 826 F.2d at 127 (D.C. Cir. 1987).  It does not "recommend how to proceed . . . with specific investigations" or "advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome." *American Immigration Council*, 905 F. Supp. 2d at 221–22 (D.D.C. 2012) (internal quotation marks omitted).  Nor does it include "factual information, mental impressions, conclusions, opinions, legal theories or legal strategies" whose disclosure would undermine the "integrity of the adversary trial process." *Jordan*, 591 F.2d at 775.  To the contrary, disclosure of the Blue Book is required to ensure the integrity of the adversary trial process.

44.     The deliberative process privilege does not shield the Blue Book from disclosure because the Blue Book reflects DOJ's settled policies and legal interpretations rather than its pre-decisional "recommendations and deliberations."  *Nat'l Labor Relations Bd.*, 421 U.S. at 150.

**The Blue Book is Not Exempt From Disclosure Under Section 552(b)(7)(E)**

45.     The Blue Book is not exempt from disclosure under section 552(b)(7)(E)

("Exemption 7(E)").  The Blue Book does not constitute a "record[] . . . compiled for law

enforcement purposes" that "would disclose techniques and procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement investigations

or prosecutions if such disclosure could reasonably be expected to risk circumvention of the

law."  5 U.S.C. § 552(b)(7)(E).

46.     Disclosure of the Blue Book will not risk circumvention of the law.  To the

contrary, it will ensure that prosecutors adhere to their legal obligations, which was the very

impetus for the Blue Book's creation.  *See Public Emples. for Envtl. Responsibility v. United

States Section Int'l Boundary & Water Comm'n*, No. 12–5158, 2014 U.S. App. LEXIS 1158, at

*18 n.4, 2014 WL 228650, at *6 n.4 (D.C. Cir. Jan. 22, 2014) ("This Court has applied the 'risk

circumvention of the law' requirement both to records containing guidelines and to records

containing techniques and procedures."); *Blackwell v. FBI*, 646 F.3d 37, 41–42 (D.C. Cir. 2011).

47.     Moreover, the Blue Book does not contain "techniques and procedures" designed

to facilitate the investigation and prosecution of individuals accused of violating the law.  Rather,

it addresses DOJ's own obligations to comply with law and, by DOJ's admission, is a means to

make certain that "prosecutors and agents [have] a full appreciation of their responsibilities"

under laws designed to ensure that accused individuals receive fair trials.  *Statement for the

Record* at 1.

48.     Further, Exemption 7(E) does not apply to "garden-variety legal analysis," which

includes discussion and digests of case law. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 n.1

(D.C. Cir. 2009).  Nor does this exemption apply to materials within the scope of 5 U.S.C. §

552(a)(2), such as administrative staff manuals.

## FIRST CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(a)(2) for Failure to Make the Blue Book Available for Inspection and Copying

49.     NACDL realleges and incorporates by reference paragraphs 1–48.

50.     Under 5 U.S.C. § 552(a)(2), "[e]ach agency, in accordance with published rules,

shall make available for inspection and copying . . . (B) those statements of policy and

interpretations which have been adopted by the agency and are not published in the Federal

Register; [and] (C) administrative staff manuals and instructions to staff that affect a member of

the public . . . ."

51.     The Blue Book, which has not been published in the Federal Register, contains

statements of policy and interpretations which have been adopted by DOJ.

52.     The Blue Book is an administrative staff manual that affects members of the

public.

53.     Defendants violated 5 U.S.C. § 552(a)(2) by failing to make the Blue Book

available to the public for inspection and copying.  A district court has jurisdiction to compel

defendants to make the Blue Book available for public inspection and copying under 5 U.S.C. §§

704 and 706.

## SECOND CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(a)(3) for Failure to Promptly Release the Blue Book in Response to NACDL's FOIA Request

54.     NACDL realleges and incorporates by reference paragraphs 1–53.

55.     Under 5 U.S.C. § 552(a)(3), agencies must disclose, upon request, all records not already subject to disclosure under paragraphs (a)(1) and (a)(2).  The agency must make the records "promptly available to any person" as long as the request "reasonably describes such records" and is made in accordance with specified procedures.  5 U.S.C. § 552(a)(3).

56.     NACDL's properly submitted FOIA request reasonably described the Blue Book as the Office of Legal Education publication entitled "Federal Criminal Discovery," believed to be published and/or distributed in March 2011 and possibly referred to as The Federal Criminal Discovery Blue Book.

57.     Defendants violated 5 U.S.C. § 552(a)(3) by failing to disclose the Blue Book in response to NACDL's FOIA request.

## REQUESTS FOR RELIEF

WHEREFORE, NACDL respectfully requests that the Court:

(A) Declare that defendants' withholding of the Blue Book is unlawful;

(B)  Order defendants to make the Blue Book available for public inspection and copying;

(C) Order defendants to produce the Blue Book to NACDL;

(D) Award NACDL its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

(E) Grant all other appropriate relief.

Dated: February 21, 2014                    Respectfully submitted,


                                            ___/s/  Kerri L. Ruttenberg_____

                                            Kerri L. Ruttenberg (D.C. Bar No. 467989)
                                            Jones Day
                                            51 Louisiana Ave N.W.
                                            Washington, DC 20001
                                            Telephone: (202) 879-5419
                                            Facsimile: (202) 626-1700
                                            Email: kruttenberg@jonesday.com

                                            Attorney for Plaintiff
                                            NATIONAL ASSOCIATION OF
                                            CRIMINAL DEFENSE LAWYERS