**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 14-cv-269 (CKK) |
| EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS and UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) ) ) | |
| Defendants. | ) ) | |

_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

LEGAL STANDARD..........................................................................................................3

ARGUMENT ....................................................................................................................4

I.   THE FCD WAS PROPERLY WITHHELD AS ATTORNEY
     WORK PRODUCT...................................................................................................4

     A.   The FCD Was Prepared Because of the Prospect of Litigation...............6

     B.   The FCD Constitutes Attorney Work Product........................................7

          1.   The FCD Contains Confidential Legal Advice and
               Litigation Strategies ....................................................................7

          2.   The FCD Does Not Simply Convey General Agency Policies.................10

          3.   The FCD Need Not Focus on a Specific Claim or
               Case to Constitute Attorney Work Product ...............................13

          4.   Disclosing the FCD Would Provide an Unfair Litigation
               Advantage to Criminal Defendants and their Attorneys and
               Discourage DOJ from Creating Written Material to Advise
               Federal Prosecutors...................................................................15

II.  THE BOOK FCD WAS PROPERLY WITHHELD AS A RECORD
     COMPILED FOR LAW ENFORCEMENT PURPOSES .................................................17

     A.   The FDC Was Compiled for Law Enforcement Purposes.....................17

     B.   The FCD Contains Law Enforcement Techniques and Procedures,
          and Law Enforcement Guidelines the Disclosure of Which Could
          Reasonably Be Expected To Create A Risk of Circumvention of
          the Law....................................................................................................20

CONCLUSION................................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Security,*
    626 F.3d 678 (2d Cir. 2010)........................................................................21

*Am. Civil Liberties Union Foundation v. United States Dep't of Justice,*
    No. 12-7412 (WHP), 2014 WL 956303 (S.D.N.Y. March 11, 2014)...............9, 13, 10, 14

*Am. Immigration Council v. United States Dep't of Homeland Security,*
    No. 11-1972 (JEB), 2014 WL 1118353 (D.D.C. March 21, 2014) ...................19

*Automobile Importers of America, Inc. v. FTC,*
    No. 81-3205, 1982 WL 1905 (D.D.C. Sept. 28 1982)......................................15

*Blackwell v. FBI,*
    646 F.3d 37 (D.C. Cir. 2011) ..............................................................20, 21, 22

*COMPTEL v. FCC,*
    910 F. Supp. 2d 100 (D.D.C.2012) ...................................................................5

*Campbell v. United States Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ....................................................................18, 19

*Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice,*
    949 F. Supp. 2d 225 (D.D.C. 2013) ..................................................................4

*Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice,*
    No. 12-5223, 2014 WL 1284811 (D.C. Cir. April 1, 2014) ............................21

*Cunningham v. United States Dep't of Justice,*
    No. 13-1115 (RMC), 2014 WL 1491175 (D.D.C. April 16, 2014)..................18

*Delaney v. IRS,*
    826 F.2d 124 (D.C. Cir. 1987) ............................................................... passim

*Dent v. Executive Office for U.S. Attorneys,*
    926 F. Supp. 2d 257 (D.D.C. 2013) ...............................................................21

*Electronic Frontier Foundation v. Dep't of Homeland Security, No. C 12-5580,*
    2014 WL 1320234 (N.D. Cal. March 31, 2014)..............................................22

*Espino v. United States Dep't of Justice,*
    869 F. Supp. 2d 25 (D.D.C. 2012) ..................................................................18

*FTC v. Grolier, Inc.,*
   462 U.S. 19 (1983).................................................................................15, 16

*Families for Freedom v. United States Customs and Border Protection,*
   837 F. Supp. 2d 287 (S.D.N.Y. 2011).....................................................6, 13, 14

*Gilman v. U.S. Dep't of Homeland Security,*
   2004 WL 984309 (D.D.C. 2014) ...............................................................18, 23

*Gilman v. U.S. Dep't of Homeland Security,*
   No. 09-0468 (BAH), 2014 WL 984309 (D.D.C. Mar. 14, 2014) .........................18, 22, 23

*Goland v. CIA,*
   607 F.2d 339 (D.C. Cir. 1978) ........................................................................3

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.,*
   762 F. Supp. 2d 123 (D.D.C. 2011) ..................................................................3

*Ground Saucer Watch, Inc. v. CIA,*
   692 F.2d 770 (D.C. Cir. 1981) ........................................................................4

*Hickman v. Taylor,*
   329 U.S. 495 (1947).....................................................................................4

*John Doe Agency v. John Doe Corp.,*
   493 U.S. 146 (1989)....................................................................................18

*Judicial Watch, Inc. v. United States Dep't of Homeland Security,*
   926 F. Supp. 2d 121 (D.D.C. 2013)...........................................................10, 11, 12

*Judicial Watch, Inc. v. United States Dep't of Housing and Urban Development,*
   No. 12-1785 (ESH), 2014 WL 788353 (D.D.C. 2014).........................................5

*Judicial Watch v. United States Dep't of Justice,*
   432 F.3d 366 (D.C. Cir. 2005) ........................................................................5

*Keys v. United States Dep't of Homeland Sec.,*
   510 F. Supp. 2d 121 (D.D.C. 2007) ................................................................21

*Keys v. United States Dep't of Justice,*
   830 F.2d 337 (D.C. Cir. 1987) ......................................................................18

*Malloy v. United States Dep't of Justice,*
   457 F. Supp. 543 (D.D.C. 1978) ....................................................................20

*Marcusse v. United States Dep't of Justice Office of Info. Policy,*

No. 12-1025 (CKK), 2013 WL 4505292 (D.D.C. Aug. 26, 2013) ......................................4

*Mayer Brown LLP v. IRS,
    562 F.3d 1190 (D.C. Cir. 2009) ......................................................................22, 23, 24

McRae v. United States Dep't of Justice,
    869 F. Supp. 2d 151 (D.D.C. 2012) ................................................................................21

Military Audit Project v. Casey,
    656 F.2d 724 (D.C. Cir.1981) ..........................................................................................3

Milner v. U.S. Dep't of Navy,
    ---- U.S. -- 131 S. Ct. 1259 (2011) ............................................................................8, 18

Morley v. CIA,
    508 F.3d 1108 (D.C. Cir. 2007) ..............................................................................20, 23

NLRB v. Sears, Roebuck & Co.,
    421 U.S. 132 (1975) ..........................................................................................................4

PHE, Inc. v. United States Dep't of Justice,
    983 F.2d 248 (D.C. Cir. 1993) ........................................................................................18

Pratt v. Webster,
    673 F.2d 408 (D.C. Cir. 1982) ..................................................................................17, 19

Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary
    & Water Comm'n, U.S.-Mexico,
    740 F.3d 195 (D.C. Cir. 2014) ..................................................................17, 18, 21, 22

SafeCard Servs., Inc. v. SEC,
    926 F.2d 1197 (D.C. Cir. 1991) ......................................................................................4

*Schiller v. NLRB,
    964 F.2d 1205 (D.C. Cir. 1992) ..................................................................................8, 13

Schoenman v. FBI,
    575 F. Supp. 2d 136 (D.D.C. 2008) ................................................................................19

*In re: Sealed Case,
    146 F.3d 881 (D.C. Cir. 1998) ....................................................................................5, 14

Senate of Puerto Rico v. U.S. Dep't of Justice,
    823 F.2d 574 (D.C. Cir. 1987) ........................................................................................5

Showing Animals Respect & Kindness v. United States Dep't of Interior,

730 F. Supp. 2d 180 (D.D.C. 2010) .................................................................................20, 23

*Soghoian v. United States Dep't of Justice,
    885 F. Supp. 2d 62 (D.D.C. 2012) ................................................................... passim

Strunk v. United States Dep't of Justice,
    905 F. Supp. 2d 142 (D.D.C. 2012) ..........................................................................21, 23

Students Against Genocide v. United States Dep't of State,
    257 F.3d 828 (D.C. Cir. 2001) ............................................................................................3

*Tax Analysts v. IRS,
    294 F.3d 71 (D.C. Cir. 2002) .....................................................................4, 13, 17, 18

United States v. Deloitte LLP,
    610 F.3d 129 (D.C. Cir. 2010) ...........................................................................................6

United States v. ISS Marine Servs., Inc.,
    905 F. Supp. 2d 121 (D.D.C. 2012) ................................................................................14

United States v. Jones,
    132 S. Ct. 945 (2012) ........................................................................................................9

Williams v. United States Dep't of Justice et al.,
    851 F.2d 1502 (D.C. Cir. 1988) .....................................................................................20

## STATUTES

5 U.S.C. § 552(a) ........................................................................................................12
5 U.S.C. § 552(b)(5) ...................................................................................................3, 4
5 U.S.C. § 552(b)(7)(E) ...........................................................................................3, 17

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ.P. 56(a) ........................................................................................................3

## INTRODUCTION

Plaintiff, the National Association of Criminal Defense Lawyers ("NACDL" or "Plaintiff"), has filed this lawsuit under the Freedom of Information Act ("FOIA") seeking access to the confidential legal analyses, litigation strategies, law enforcement procedures and guidelines, mental impressions, and recommendations, that a group of United States Department of Justice ("DOJ") attorneys have compiled in a book called "Federal Criminal Discovery" ("FCD").[1]  This book was created exclusively for federal prosecutors to provide them advice and guidance regarding discovery-related issues that arise in criminal investigation and prosecutions. In specific part, it advises federal prosecutors about how to comply with their discovery obligations, how to avoid and handle discovery disputes, and how to protect and represent the Government's interests in litigation.  In so doing, the FCD describes law enforcement techniques, procedures, and guidelines, the disclosure of which could create a risk of circumvention of the law.  For these reasons, and as demonstrated below, the FCD is exempt from disclosure under FOIA.

First, the FCD is exempt from disclosure under FOIA's Exemption 5 because it is attorney work product.  In the aftermath of the discovery failures that occurred during the criminal prosecution of the late Senator Theodore Stevens, a select group of DOJ attorneys created the FCD to counsel and advise federal prosecutors on discovery issues in order to better ensure that similar problems that might compromise the Government's investigations and prosecutions do not occur in future litigation.  The FCD analyzes the legal sources of discovery obligations, describes how courts have interpreted different requirements, and offers litigation

---

[1] This book is also referred to as the "Federal Criminal Discovery Blue Book."  *See* Declaration of Susan B. Gerson ("Gerson Decl.") ¶¶ 6, 7 (attached as Exhibit 1); Declaration of Andrew D. Goldsmith ("Goldsmith Decl.") ¶ 4 (attached as Exhibit 2).

advice to prosecutors on a wide array of issues.  The disclosure of this book would allow criminal defendants to benefit from the Government's legal analysis, reveal litigation strategies federal prosecutors may and do employ in criminal investigations and prosecutions, and discourage DOJ attorneys from creating written material to advise other DOJ attorneys.

Second, the FCD is also exempt from disclosure under FOIA Exemption 7(E) because it describes techniques, procedures, and guidelines for criminal investigations and prosecutions. Among other things, the FCD explains the limitations of certain arguments that prosecutors could make and how prosecutors can counter defense counsel tactics and protect Government investigations and prosecutions.  The FCD also provides legal strategies that prosecutors can employ during the course of criminal proceedings, and describes procedures about how to protect witnesses and evidence.  Disclosure of this information could allow individuals to defeat law enforcement efforts and possibly escape justice.

Plaintiff posits that "full transparency" of the Government's work product and investigative techniques and procedures is necessary to restore "public confidence in the integrity of federal prosecutions."  Compl. ¶ 4.  Quite clearly, however, disclosures of the FCD would provide an unfair advantage to criminal defendants and their attorneys, and could undermine law enforcement processes.  Accordingly, the Court should reject Plaintiff's attempt to gain an unfair advantage in litigation against the Government.

## **BACKGROUND**

By letter dated December 20, 2012, Kyle O'Dowd, on behalf of the NACDL, submitted a FOIA request addressed to the Executive Office of United States Attorneys ("EOUSA"), a component of DOJ, seeking disclosure of the FCD.  Gerson Decl. ¶ 5.  EOUSA received this request on December 27, 2012.  *Id.*  EOUSA located the requested document and evaluated

whether it could be disclosed.  *Id.* ¶ 8.  Based on this review and on consultations with DOJ

attorneys familiar with the FCD, EOUSA determined that the book as a whole was exempt from

disclosure under 5 U.S.C § 552(b)(5) because it constituted attorney work product.  *Id.* ¶ 10.  In

addition, EOUSA determined that the book was compiled for law enforcement purposes and

contained techniques, procedures, and guidelines for criminal investigations and prosecutions.

*Id.*  Accordingly, EOUSA also withheld the FCD as a whole under 5 U.S.C. § 552(b)(7)(E).  *Id.*

Since the FCD as a whole constituted attorney work product and consisted of law enforcement

techniques, procedures, and guidelines, there was not reasonably segregable, nonexempt

information that could be released and the FOIA request was denied in full.  *Id.  See id.* ¶ 35.

By letter dated February 28, 2013, EOUSA informed Plaintiff that its FOIA request was

denied in full pursuant to Exemptions 5 and 7(E).  *Id.* ¶ 11.  By letter dated April 26, 2013,

Plaintiff appealed EOUSA's decision to the Office of Information Policy ("OIP"), which

affirmed the denial on partially modified grounds.  *Id.* ¶¶ 12, 13.  The instant lawsuit ensued.

## **LEGAL STANDARD**

The Court grants summary judgment if the movant shows that there is no genuine dispute

as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

FOIA cases are typically and appropriately decided on motions for summary judgment.  *Gold*

*Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123,

130 (D.D.C. 2011).  An agency is entitled to summary judgment if it demonstrates based on

undisputed facts that the documents requested either have been produced or are exempt from

disclosure.  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)

(quoting *Goland v. CIA,* 607 F.2d 339, 352 (D.C. Cir. 1978)).  An agency can meet its burden by

submitting declarations or affidavits describing the justification for nondisclosure and how the

information withheld logically falls within the claim exemptions. *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). The agency's affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." *Citizens for Responsibility and Ethics in Wash. v. United States Dep't of Justice*, 949 F. Supp. 2d 225, 231 (D.D.C. 2013) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "To rebut the presumption [accorded to an agency's declarations], a plaintiff 'must point to evidence sufficient to put the Agency's good faith into doubt.'" *Marcusse v. United States Dep't of Justice Office of Info. Policy*, No. 12-1025, 2013 WL 4505292, at *6 (D.D.C. Aug. 26, 2013) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ARGUMENT

### I.    THE FCD WAS PROPERLY WITHHELD AS ATTORNEY WORK PRODUCT

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Records are exempt from disclosure if they would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Exemption 5 incorporates the privileges that are available to an agency in civil litigation, including the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).

In this case, Defendants withheld the FCD because it constitutes attorney work product. As the Supreme Court has observed, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). If lawyers were forced to disclose their materials "to opposing counsel on mere demand . . . [a]n attorney's thoughts, heretofore inviolate, would not

4

be his own.  Inefficiency, unfairness, and sharp practices would inevitably develop in the giving

of legal advice and in the preparation of cases for trial." *Id.* at 511.  Accordingly, the attorney

work-product privilege "should be interpreted broadly and held largely inviolate." *Judicial

Watch v. United States Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005).  Indeed, "[w]ithout

a strong work-product privilege, lawyers would keep their thoughts to themselves, avoid

communicating with other lawyers, and hesitate to take notes." *In re: Sealed Case*, 146 F.3d

881, 884 (D.C. Cir. 1998).  "If a document is fully protected as work product, then segregability

is not required." *Judicial Watch*, 432 F.3d at 371.  *See, e.g., Judicial Watch v. United States

Dep't of Hous. & Urban Dev.*, No. 12-1785 (ESH), 2014 WL 788353, at *8 n.8 (D.D.C. Feb. 28,

2014) ("the [segregability] requirement does not apply to documents withheld pursuant to the

work product privilege.") (citing *Judicial Watch*, 432 F.3d at 371); *COMPTEL v. FCC,* 910 F.

Supp. 2d 100, 122 (D.D.C. 2012) ("If a document is fully protected as work product, then

segregability is not required because that privilege does not distinguish between factual and

deliberative materials.") (citations and quotation marks omitted); *Soghoian v. United States

Dep't of Justice*, 885 F. Supp. 2d 62, 76 (D.D.C. 2012) ("[T]he Court does not need to consider

whether documents that are appropriately withheld as attorney work product are properly

severable.").

  "The work-product privilege protects written materials lawyers prepare 'in anticipation of

litigation.'" *In re: Sealed Case*, 146 F.3d at 884 (quoting Fed. R. Civ. P. 26(b)(3)).  The test in

this Circuit is "'whether, in light of the nature of the document and the factual situation in the

particular case, the document can fairly be said to have been prepared or obtained because of the

prospect of litigation.'" *In re: Sealed Case,* 146 F.3d at 884 (quoting *Senate of Puerto Rico v.

U.S. Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987)).   For this standard to be met,

"the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *Id.* Courts evaluate the function and contents of the document in determining whether it constitutes attorney work product. *See United States v. Deloitte LLP*, 610 F.3d 129, 137-39 (D.C. Cir. 2010).

Pursuant to the above standards, the function and contents of the FCD readily reveal that it constitutes attorney work product, as it advises federal prosecutors on issues they will confront in litigation in order to better ensure the integrity of investigations and prosecutions.

### A.  The FCD Was Prepared Because of the Prospect of Litigation.

A document is exempt from disclosure as attorney work product "so long as the protected material was prepared because of the prospect of litigation." *Deloitte*, 610 F.3d at 138. *See Families for Freedom v. United States Customs and Border Prot.*, 837 F. Supp. 2d 287, 302-03 (S.D.N.Y. 2011) (memorandum offering opinion on legal standards applicable to immigration checks conducted by the Border Patrol aboard Amtrak trains prepared in reasonable anticipation of litigation given agency's "extensive program of transportation checks and arrests").  In this case, the FCD was triggered by litigation and was created for litigation.  "Although the discovery failures that occurred in the prosecution against the late Senator Theodore Stevens were an aberration, after the Attorney General moved to dismiss the case in April 2009 he immediately directed DOJ to take steps to address those failures and to ensure that similar problems did not arise in future investigations and prosecutions."  Gerson Decl. ¶ 17.  One of these steps was the creation of the Criminal Discovery and Case Management Working group. *Id.*  The FCD was a key initiative of this group. *Id.* ¶ 18. *See* Goldsmith Decl. ¶ 5.  Under the direction of senior DOJ officials, "several DOJ attorneys with expertise in particular subjects related to discovery were selected to write the [nine] chapters of the book."  Gerson Decl. ¶ 19; Goldsmith Decl. ¶ 5.

6

The book advises prosecutors on the legal sources of their discovery obligations as well as on "the types of discovery-related claims and issues that they would inevitably confront in the investigations and prosecutions that they handle in the course of fulfilling their law enforcement duties."  Gerson Decl. ¶ 18.  *See* Goldsmith Decl. ¶ 5 (the FCD covers "subjects such as Rule 16, *Brady*, *Giglio*, the Jenks Act, items protected from disclosure, protective orders, and *ex parte* or *in camera* submissions, among others" and "contain[s] practical 'how-to' advice for federal prosecutors across the nation.").  "The advice and strategies provided in the book are meant to ensure that discovery-related issues do not compromise DOJ investigations and prosecutions." Goldsmith Decl. ¶ 7.  *See* Gerson Decl. ¶ 20.  Therefore, because DOJ created the FCD for the prosecutors' use in criminal investigations and prosecutions, and because discovery issues could undermine those investigations and prosecutions, the book meets the requirement of being created because of the prospect of litigation.

**B.  The FCD Constitutes Attorney Work Product.**

The FCD constitutes attorney work product because it contains legal advice and litigation strategies to support the Government's investigations and prosecutions.  The book does not simply explain general agency standards but contains the opinions, recommendations, legal analysis, and litigation strategies of DOJ attorneys chosen to advise federal prosecutors on discovery issues.  This is the very type of information that the attorney work-product doctrine protects, and its disclosure would give criminal defense attorneys an unfair advantage in litigation against the Government.

1)  <u>The FCD Contains Confidential Legal Advice and Litigation Strategies</u>.

The D.C. Circuit has held that documents that "advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the

agency, and the likely outcome" constitute attorney work product and are exempt from

disclosure. *Delaney v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987). Such documents are

distinguishable from documents containing "neutral, objective analyses of agency regulations" or

that "flesh[] out the meaning of [a] statute [the agency is] authorized to enforce[,]" which are not

protected under the attorney work-product doctrine. *Id.* For example, in *Schiller v. NLRB*, the

D.C. Circuit held that agency documents containing "tips for handling unfair labor practice cases

that could affect subsequent EAJA [Equal Access to Justice Act] litigation . . . advice on how to

build an EAJA defense and how to litigate EAJA cases" and " provid[ing] instructions on

preparing and filing pleadings in EAJA cases, including arguments and authorities" were exempt

as attorney work product because they were created "in anticipation of foreseeable litigation,

even if no specific claim [was] contemplated." 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated

on other grounds by Milner v. U.S. Dep't of Navy*, ---- U.S. ----, 131 S. Ct. 1259 (2011).

   Consistent with the holdings of the D.C. Circuit in *Delaney* and *Schiller*, courts have

ruled that DOJ manuals and documents that analyze cases and provide advice to prosecutors are

exempt from disclosure as attorney work-product. For example, the plaintiff in *Soghoian* sought

access under FOIA to two types of documents: (1) "internal presentations and discussions among

DOJ attorneys that analyze[d] the legal precedents and statutes applicable to the various methods

of obtaining evidence from cell phones themselves and from phone carriers"; and (2) "an internal

manual . . . contain[ing] legal guidance for attorneys conducting investigations." 885 F. Supp.

2d 62, 72 (D.D.C. 2012). The manual "employ[ed] language stating that '[the agency]

recommends' certain legal approaches and strategies over others[.]" *Id.* This Court held that

both types of documents were exempt from disclosure as attorney work product "because they

present[ed] the legal strategies of the DOJ attorneys who will be required to litigate on behalf of

the government." *Id*. at 73.  Likewise, when a plaintiff sought access to two memoranda

providing guidance to DOJ prosecutors regarding the applicability of *United States v. Jones*, 132

S. Ct. 945 (2012), to GPS tracking devices and to additional investigative techniques, the court

held that these documents were exempt as attorney work-product because they "discuss[ed] the

legal arguments prosecutors should make when criminal defendants claim the Government

violated the Fourth Amendment and the potential weaknesses of those arguments."  *Am. Civil

Liberties Union Found. v. United States Dep't of Justice*, No. 12-7412 (WHP), 2014 WL

956303, at *1, *6 (S.D.N.Y. March 11, 2014).

    For like reasons, the FCD is exempt from disclosure as attorney work product because it

contains litigation advice for prosecutors regarding discovery issues, litigation strategies to

employ in carrying out their law enforcement duties, and arguments and authority to defeat

discovery claims by defendants.  *See Delaney*, 826 F.2d at 127.  Like the manual held to

constitute attorney work product in *Soghoian*, the FCD "explicitly discourages certain practices

and encourages others[.]"  Gerson Decl. ¶ 21.  For example, the FCD "discusses the

circumstances under which broad and early disclosure is advised and when it is not advised."  *Id*.

*See* Goldsmith Decl. ¶ 10 ("A prosecutor may be able to take a broad approach to discovery in

one case, yet may seek to delay or limit disclosure in another case with different facts and

circumstances.").  It also "identifies factors prosecutors should consider before taking particular

discovery and litigation decisions, such as seeking protective orders."  Gerson Decl. ¶ 21.  *See*

Goldsmith Decl. ¶¶ 5, 9 (the FCD covers "protective orders," including "how, why, and when to

seek protective orders relating to potentially discoverable information (or materials protected

from disclosure)").  Furthermore, like the memoranda in *American Civil Liberties Union

Foundation*, the FCD "describes the types of claims defense counsel have raised and could raise

regarding different discovery issues, or the tactics they could employ in litigation against the Government, and the arguments prosecutors can make to respond to these claims and the steps they should take to counter defense counsel tactics and protect Government investigations and prosecutions."  Gerson Decl. ¶ 21.  In so doing, the FCD "offers compilations of cases that prosecutors can use to support different arguments" and assesses the limitations of these arguments.  *Id*.  It also illustrates with cases potential pitfalls to avoid and arguments available in case prosecutors fall into those pitfalls.  *Id*.  Furthermore, because "each chapter was written by one or more DOJ attorneys, the [FCD] necessarily contains the opinions, mental impressions, and recommendations of individual DOJ attorneys that were selected to advise federal prosecutors regarding discovery issues."  *Id*.  *See* Goldsmith Decl. ¶ 13 (FCD contains "strategies, procedures, and opinions critical to [DOJ]'s handling of federal prosecutions.").

DOJ also intended the FCD "to be confidential."  Gerson Decl. ¶ 22.  Indeed, the cover page of the book states that DOJ "makes no public release of it" and that individuals receiving the book should "treat it confidentially."  *Id*.  Accordingly, the FCD is only distributed and accessible to DOJ personnel and other federal law enforcement officials with whom federal prosecutors work in criminal investigations and prosecutions.  *Id*.  *Cf. Soghoian*, 885 F. Supp. 2d at 72 (agency manual exempt as attorney work product distributed only within agency).[2]

2)  The FCD Does Not Simply Convey General Agency Policies.

Plaintiff mistakenly relies on *Judicial Watch, Inc. v. United States Department of Homeland Security*, 926 F. Supp. 2d 121, 142-43 (D.D.C. 2013), in suggesting that the FCD

---

[2] Over the Government's objection that the FCD constituted attorney work product, one court in a criminal case ordered disclosure of the FCD in a sealed order.  However, that court issued a protective order prohibiting the defendants and his representatives from copying the FCD, from disseminating its contents to anyone outside the defense team, and from keeping a copy of the FCD after the motion relevant to the book was resolved.  *See* Goldsmith Decl. ¶ 7 n.1.

simply contains "general standards" and thus is not exempt from disclosure as attorney work

product.  Compl.  ¶ 42.  In *Judicial Watch*, plaintiff sought disclosure of memoranda by the

Chief Counsel of the Houston office of the United States Immigration and Customs Enforcement

("ICE"), a component and investigative arm of the Department of Homeland Security, to

attorneys in his office concerning the exercise of prosecutorial discretion in his office.  926 F.

Supp. 2d 121, 127 (D.D.C. 2013).  The Court held that the documents did not constitute work

product because their purpose "was to convey agency policies and instructions regarding the

exercise of prosecutorial discretion in civil immigration enforcement[,]" and did not "include[]

mental impressions, conclusions, opinions, or legal theories of [the Chief Counsel], or any other

agency attorney, relevant to any specific, ongoing or prospective case or cases."  *Id*. at 143

(citing *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 775-76 (D.C. Cir. 1978),

*overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670

F.2d 1051 (D.C. Cir. 1981) (en banc)).[3]

     Unlike the memoranda in *Judicial Watch*, the FCD does not simply "convey agency

policies and instructions," or fleshes out the meaning of statutes, rules, and precedent dealing

with discovery.  "[W]hile the [FCD] endeavors to accurately describe the prosecutor's discovery

---

[3] *Jordan*, on which Plaintiff also relies, is inapposite.  In that case the plaintiff was seeking
access to documents regarding the exercise of prosecutorial discretion by the United States
Attorney for the District of Columbia.  591 F.2d at 757.  The Court held that the documents were
not protected as attorney work product because they were not "prepared in anticipation of a
particular trial; in fact, they were not even prepared in anticipation of trials in general" but rather
"were promulgated as general standards to guide the Government lawyers in determining
whether or not to bring an individual to trial in the first place."  *Id*. at 775.  The same cannot be
said of the FCD.  The FCD was prepared for the prosecutors' use in actual criminal
investigations and prosecutions, and it contains mental impressions, opinions, legal analyses and
strategies to support the Government's investigations and prosecutions.  Gerson Decl. ¶¶ 20, 21.
In addition, whereas in *Jordan* the court concluded that the "public disclosure of the[] guidelines
[at issue] could have no conceivable effect on the actual conduct of an on-going or prospective
trial," 591 F.2d at 776, public disclosure of the FCD would unquestionably impact upon criminal
prosecutions and would give criminal defendants and their counsel unfair litigation advantages.

obligations, it does not simply provide a neutral analysis of the law.  Rather, the [FCD] is a

litigation manual for prosecutors containing confidential legal analysis and strategies to support

the Government's investigations and prosecutions."  Gerson Decl. ¶ 21.  *See* Goldsmith Decl. ¶ 6

(the FCD contains "legal analysis and advice on criminal discovery practices, potential strategic

and logistical concerns, interpretations of law and risk assessments in light of relevant legal

authority, as well as precedent, practice notes, techniques, procedures, and legal strategies that

in-the-field prosecutors may and do employ during the course of criminal proceedings.");

Goldsmith Decl. ¶ 14 (the FCD's "guidelines consist not only of an exposition of the many legal

principles applicable to criminal discovery, but also interpretation and analysis of those

principles by DOJ attorneys, legal strategy, practice tips, and logistical considerations.  In other

words, the [FCD] is a litigation guide intended to offer strategy and advice to prosecutors.").  *Cf.*

*Soghian*, 885 F. Supp. 2d at 72 (internal DOJ documents and manuals protected as attorney work

product because "the legal strategies and issues addressed in [them] . . . relate to foreseeable

litigation arising out of the government's criminal investigations.").  As noted above, the FCD

also advises on the types of claims defense counsel raise regarding different discovery issues and

the tactics they employ in litigation, and also the arguments prosecutors can make in response to

such tactics.  Gerson Decl. ¶ 21.  In addition, as also noted above, the FCD contains the opinions,

mental impressions, and recommendations of the particular DOJ attorneys that were selected to

advice federal prosecutors regarding discovery issues.  *Id.*  Accordingly, *Judicial Watch* provides

no support to Plaintiff.

Plaintiff also argues that the FCD must be disclosed because it "contains statements of

policy and interpretations which have been adopted by DOJ" and is "an administrative staff

manual that affects members of the public."  Compl. ¶¶ 49-53 (citing 5 U.S.C. § 552(a)).  This

argument is meritless.  While the book "endeavors to accurately describe the prosecutor's

discovery obligations," which stem from statutes, rules, cases, and publicly available DOJ

polices, it does not create a set of rigid rules for prosecutors to follow in every single case, but

rather contains advice and recommendations from several DOJ attorneys on how to handle

different discovery issues that arise in the course of criminal investigations and prosecutions.

Gerson Decl. ¶¶ 18-21, 29; Goldsmith Decl. ¶ 6 (FCD contains "practice notes, techniques,

procedures, and legal strategies that in-the-field prosecutors *may* and do employ during the

course of criminal proceedings.") (emphasis added).  The FCD does not have "the effect of a

final disposition," nor do the analysis, interpretations, and advice from particular DOJ attorneys

contained in the book have any "legal effect," as the "results of the DOJ's arguments will be

borne out in the courts."  *ACLU*, 2014 WL 956303, at *6 (citing *Families for Freedom*, 797 F.

Supp. 2d at 396).  The book is also not an "administrative staff manual," but rather a "litigation

manual for prosecutors containing confidential legal analysis and strategies to support the

Government's investigations and prosecutions."  Gerson Decl. ¶ 21.  *See* Goldsmith Decl. ¶ 5.[4]

> 3)  <u>The FCD Need Not Focus on a Specific Claim or Case to Constitute Attorney
> Work Product</u>.

Plaintiff also suggests that the FCD does not constitute attorney work product because it

"does not 'recommend how to proceed . . . with specific investigations[.]'"  Compl. ¶ 43.  The

D.C. Circuit "ha[s] already rejected that argument."  *Schiller*, 964 F.2d at 1208 ("Exemption 5

extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim

is contemplated."); *Delaney*, 826 F.2d at 126-27 (rejecting argument that work product applies

---

[4] In any event, because the book as a whole constitutes attorney work product, DOJ is not
required to disclose portions that may describe any adopted policies or interpretations. *Tax
Analysts*, 294 F.3d at 76 ("[T]he District Court correctly determined that IRS need not segregate
and release agency working law from TAs withheld in their entirety pursuant to the attorney
work product privilege.").

only when a specific claim has arisen). *See Soghoian*, 885 F. Supp. 2d at 72 ("While plaintiff

correctly notes that the documents in question do not relate to any specific claim or litigation, the

D.C. Circuit has not construed the privilege so narrowly as to protect only work product related

to specific cases currently in litigation.") (citations omitted).

      Where, as here, "government lawyers act[] not as prosecutors or investigators of

suspected wrongdoers, but as legal advisors protecting their agency clients from the possibility of

future litigation," no specific claim, investigation, or litigation is required for a document to be

protected as attorney work product as long as "all of the circumstances[ show that] the lawyers

prepared the materials 'in anticipation of litigation.'" *In re: Sealed Case*, 146 F.3d at 885.  *See*

*United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 136 (D.D.C. 2012) ("a more

lenient specificity standard applies when the attorney (or agent thereof) preparing the document

acted 'as [a] legal advisor[] protecting the [attorney's] clients from the possibility of future

litigation.'").  Indeed, "[i]t is often prior to the emergence of specific claims that lawyers are best

equipped either to help clients avoid litigation or to strengthen available defenses should

litigation occur." *In re: Sealed Case*, 146 F.3d at 886.  "If lawyers had to wait for specific

claims to arise before their writings could enjoy work-product protection, they would not likely

risk taking notes about such matters or communicating in writing with colleagues, thus severely

limiting their ability to advise clients effectively." *Id.*  Accordingly, courts have protected

agency documents prepared in anticipation of litigation as attorney work product even if the

documents do not focus on a specific case or claim.  *See, e.g., ACLU*, 2014 WL 956303, at *6

(DOJ memoranda discussing "the legal arguments prosecutors should make when criminal

defendants claim the Government violated the Fourth Amendment"); *Families for Freedom*, 837

F. Supp. 2d at 302-03 (memorandum on legal standards applicable to immigration checks

conducted by the Border Patrol "may well be protected attorney work-product"); *Auto. Imps. of Am., Inc. v. FTC*, No. 81-3205, 1982 WL 1905, at *1, *3 (D.D.C. Sept. 28 1982) (memoranda discussing "merits of possible remedies in automobile defect cases" exempt as work product because they had "value to the agency as an enforcement theory and litigation device [of] broad applicability within the context of the FTC's auto defect program.").

Because, as explained above, the attorneys who wrote the chapters of the FCD were acting as advisors of DOJ prosecutors, these attorneys provided practical "how-to" advice and litigation strategies to support the Government's investigations and prosecutions, and all circumstances show that the book was prepared in anticipation of litigation, the FCD constitutes attorney work product.

> 4)   Disclosing the FCD Would Provide an Unfair Litigation Advantage to Criminal Defendants and their Attorneys and Discourage DOJ from Creating Written Material to Advise Federal Prosecutors.

"[R]elease of the [FCD] would give defense counsel an unfair advantage over the prosecution as it would reveal internal details of the prosecution's strategy for the handling and development of criminal cases."  Goldsmith Decl. ¶ 10.  *See* Gerson Decl. ¶ 21 (Because the FCD contains "confidential legal analysis and strategies to support the Government's investigations and prosecutions," disclosure of this information would allow "defense counsel to use this privileged information in litigation against the Government as well as undermine law enforcement efforts.").  Indeed, Plaintiff here is an organization of criminal defense attorneys. Defense counsel should not be able to get the "benefit of [DOJ's] legal and factual research and reasoning . . .  to litigate 'on wits borrowed from the adversary' . . . [or to] gain insight into [DOJ's] general strategic and tactical approach to" dealing with different discovery issues that arise during criminal investigations and prosecutions.  *FTC v. Grolier, Inc.*, 462 U.S. 19, 30-31

(1983) (citation omitted).  DOJ, as other "litigants who face litigation of a commonly recurring type . . . ha[s] an acute interest in keeping private the manner in which [it] conduct[s] and settle[s] [its] recurring legal disputes."  *Id.* at 31.  *See Delaney*, 826 F.2d at 127 (protecting IRS memoranda containing "the agency's attorneys' assessments of the program's legal vulnerabilities" because plaintiff sought access to it "to make sure it d[id] not miss anything in crafting its legal case against the program.").  This interest is especially strong in the context of criminal investigations and prosecutions, as disclosure of "the myriad legal, strategic, and tactical considerations" of federal prosecutors in deciding the manner and timing of discovery in criminal cases could undermine Government efforts to safeguard important public interests, such as ensuring just results, protecting victims and witnesses, guaranteeing the integrity of on-going criminal investigations and prosecutions, and safeguarding national security.  Goldsmith Decl. ¶ 10.  Disclosure of the FCD book would also discourage DOJ from "creating and retaining written work product" for fear that adversaries may gain access to it.  *Grolier*, 462 U.S. at 30-31.  *See* Goldsmith Decl. ¶ 13 ("Disclosure [of the FCD] would severely hamper the adversarial process as DOJ attorneys would no longer feel free to memorialize critical thoughts on litigation strategies for fear that the information might be disclosed to their adversaries to the detriment [of] the government's current and future litigating positions.").

The FCD was created to advise DOJ attorneys about how to comply with their discovery obligations and how to avoid discovery issues that could compromise criminal investigations and prosecutions.  The DOJ attorneys who were selected to advise federal prosecutors on these issues set forth in the FCD their recommended litigation strategies for federal prosecutors to follow, and provided their candid assessments of the different rules, cases, and arguments that prosecutors may rely on when carrying out their law enforcement duties.  Disclosing this

16

information to Plaintiff, an organization of criminal defense lawyers, would give an unfair

advantage to criminal defendants in litigation against the Government, as it would allow them to

litigate against the Government with the benefit of the Government's legal research, analysis,

and strategic approaches.  Because preventing this unfair advantage and protecting an attorney's

thoughts from improper intrusion by adversaries is the very purpose of the attorney work-product

privilege, the FCD is categorically exempt from disclosure.

## II.   THE FCD WAS PROPERLY WITHHELD AS A RECORD COMPILED FOR LAW ENFORCEMENT PURPOSES

FOIA Exemption 7(E) protects agency records "compiled for law enforcement purposes"

that "would disclose techniques and procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosures could reasonably be expected to risk circumvention of the law."  5 U.S.C.

§ 552(b)(7)(E).  As explained below, the FCD is exempt from disclosure under Exemption 7(E)

because it was compiled for law enforcement purposes and sets forth techniques and procedures

to be employed by prosecutors when carrying out their law enforcement duties, and because it

contains law enforcement guidelines the disclosure of which could reasonably be expected to

create a risk that individuals might modify their behavior in order to circumvent the law.

### A.  The FCD Was Compiled for Law Enforcement Purposes.

The threshold requirement for a record to fall within Exemption 7 is that it be "compiled

for law enforcement purposes."  *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l*

*Boundary & Water Comm'n, U.S.–Mexico,* 740 F.3d 195, 202-03 (D.C. Cir. 2014).  "[C]ourts

apply a more deferential standard to a claim that information was compiled for law enforcement

purposes when the claim is made by an agency whose primary function involves law

enforcement."  *Tax Analysts*, 294 F.3d at 77 (citing *Pratt v. Webster*, 673 F.2d 408, 418 (D.C.

17

Cir. 1982)).  Because DOJ "specialize[s] in law enforcement, [its] decision[] to invoke [E]xemption 7 [is] entitled to deference."  *Cunningham v. United States Dep't of Justice*, No. 13-1115 (RMC), 2014 WL 1491175, at *9 (D.D.C. April 16, 2014) (EOUSA's and Marshals Service's invocation of Exemption 7 entitled to deference) (citing *Campbell v. United States Dep't of Justice,* 164 F.3d 20, 32 (D.C. Cir. 1998)).  *See, e.g., Espino v. United States Dep't of Justice*, 869 F. Supp. 2d 25, 29 (D.D.C. 2012) (citing *Keys v. United States Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987)).

The term "compiled[5] for law enforcement purposes" in Exemption 7 is "given a fairly broad meaning[.]"  *Milner*, 131 S. Ct. at 1272-73 (Alito, J., concurring).  It is not required that the records be originally or solely compiled for law enforcement purposes, *Milner*, 131 S. Ct. at 1273 (Alito, J., concurring) (citing *John Doe Agency*, 493 U.S. at 155), as long as they are "created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption[,]" *Pub. Emps.*, 740 F.3d at 203 (citing *John Doe Agency,* 493 U.S. at 155).  Furthermore, records can be "compiled for law enforcement purposes" even if they "have not been compiled in the course of a specific investigation." *Tax Analysts*, 294 F.3d at 79. The legislative history of the 1986 amendments to Exemption 7(E) "makes it clear that Congress intended the amended exemption to protect both investigatory and non-investigatory materials, including *law enforcement manuals* and the like." *Tax Analysts*, 294 F.3d at 79 (citing S. Rep. No. 98-221, at 23 (1983)) (emphasis added).  *See, e.g., PHE, Inc. v. United States Dep't of Justice,* 983 F.2d 248, 250-51 (D.C. Cir. 1993) (portions of a FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)); *Gilman v. U.S. Dep't of Homeland Sec.*, No. 09-0468 (BAH),

---

[5] A compilation are "materials collected and assembled from various sources or other documents."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989).

2014 WL 984309, at *11 (D.D.C. Mar. 14, 2014) (emails containing assessments of the operational need for fencing border zones complied for law enforcement purposes).

In order to meet this threshold requirement, the agency only needs to "establish a 'rational nexus' between [its] law enforcement purpose and the documents at issue[.]" *Schoenman v. FBI*, 575 F. Supp. 2d 136, 158 (D.D.C. 2008) (citing *Campbell*, 164 F.3d at 32; *Pratt* 673 F.2d at 421). Such rational nexus clearly exists here. "The criminal discovery process is directly related to the law enforcement function carried out by DOJ[.]" Goldsmith Decl. ¶ 7. The FCD was specifically created to advise federal prosecutors on the "discovery-related claims and issues that they would inevitably confront in the investigations and prosecutions that they handle in the course of fulfilling their law enforcement duties." Gerson Decl. ¶ 18. The book offers "advice on how to handle different scenarios and problems so that [the Government's] investigations and prosecutions are not compromised by discovery problems and litigation." *Id.* ¶ 20. The book also contains "practice notes, techniques, procedures, and legal strategies that in-the-field prosecutors may and do employ during the course of criminal proceedings." Goldsmith Decl. ¶ 6. In sum, the book "is a litigation manual for prosecutors containing confidential legal analysis and strategies to support the Government's investigations and prosecutions." Gerson Decl. ¶ 21.

"If a FOIA defendant can show that the information withheld bears on its law-enforcement activities—even activities that are not guaranteed to result in enforcement proceedings—it will have satisfied Exemption 7's threshold requirement." *Am. Immigration Council v. United States Dep't of Homeland Sec.*, No. 11-1972 (JEB), 2014 WL 1118353, at *4 (D.D.C. March 21, 2014). Here, because DOJ has shown that the FCD bears on its law

enforcement activities, the book meets Exemption 7's threshold requirement of being compiled for law enforcement purposes.

**B. The FCD Contains Law Enforcement Techniques and Procedures, and Law Enforcement Guidelines the Disclosure of Which Could Reasonably Be Expected To Create A Risk of Circumvention of the Law.**

Under FOIA Exemption 7(E), courts have protected from disclosure a wide range of law enforcement techniques and procedures.  *See, e.g., Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (FBI procedures for conducting forensic examinations of computers and gathering data); *Morley v. CIA*, 508 F.3d 1108, 1128-29 (D.C. Cir. 2007) (CIA techniques and procedures for conducting background investigations of its officers); *Soghoian*, 885 F. Supp. 2d at 74-75 ("legal and investigative techniques that should be considered by investigators and Assistant United States Attorneys in conducting criminal investigations" regarding "what information is collected, how it is collected, and . . . when it is *not* collected"); *Showing Animals Respect & Kindness v. United States Dep't of Interior,* 730 F. Supp. 2d 180, 199-200 (D.D.C. 2010) (surveillance techniques used by the Fish and Wildlife Service).  Law enforcement techniques and procedures are exempt from disclosure as long as they are generally unknown to the public.  *Williams v. United States Dep't of Justice*, 851 F.2d 1502, 1502 (D.C. Cir. 1988) (citing *Malloy v. United States Dep't of Justice*, 457 F. Supp. 543, 545 (D.D.C. 1978)).

The FCD contains techniques and procedures prosecutors "may and do employ during the course of criminal proceedings."  Goldsmith Decl. ¶ 6.  For example, it describes techniques and procedures for protecting "witnesses from retaliation and intimidation[,]" for properly handling statements of defendants and witnesses, for determining the scope and timing of disclosures, for obtaining electronic and other forms of evidence, for ensuring "that the Government receives appropriate discovery from the defense[,]" for "dealing with subpoenas seeking information that

may be discoverable[,]" and for seeking "protective orders relating to potentially discoverable information[,]" among others.  Goldsmith Decl. ¶ 9.  The FCD also contains guidelines for prosecutors to follow in conducting investigations and prosecutions, insofar as it provides advice to prosecutors in the form of legal analyses, litigation strategies, practice tips, logistical considerations, and recommendations to fulfill their discovery obligations, handle discovery issues, avoid discovery disputes, and litigate discovery-related claims.  Goldsmith Decl. ¶ 14; Gerson Decl. ¶ 34.  Some of these techniques, procedures, and guidelines "are specifically set out as 'Practice Notes,' Caveats,' 'Strategic and Logistical Concerns,' or 'Practical Considerations,' but many are interspersed within the legal analysis."  Goldsmith Decl. ¶ 9.[6]  "The totality of the[se] techniques, procedures, [and] guidelines … are not generally known to the public."  *Id.*

While "techniques and procedures for law enforcement investigations or prosecutions" are protected regardless of whether their disclosure would create a risk of circumvention of the law,[7] the disclosure of the FCD could reasonably be expected to cause this outcome.  *See* Gerson

---

[6] Given that the FCD as a whole consists of guidelines for investigations and prosecutions, there is no reasonably segregable, nonexempt information that can be disclosed.  Gerson Decl. ¶ 35.

[7] The D.C. Circuit has noted a disagreement among courts about whether Exemption 7(E)'s final, qualifying clause – that the disclosure of the records at issue could reasonably be expected to risk circumvention of the law – applies to records containing "techniques and procedures" for law enforcement as opposed to guidelines for law enforcement.  *Citizens for Responsibility and Ethics in Wash. v. United States Dep't of Justice*, No. 12-5223, 2014 WL 1284811, at *14 n.8 (D.C. Cir. 2014).  For example, while the D.C. Circuit, without deciding this issue, has applied this requirement both to records containing guidelines and to records containing techniques and procedures, the Second Circuit has held that the requirement applies only to records containing guidelines.  *Pub. Emp.*, 740 F.3d at 205 n.4 (citing *Blackwell*, 646 F.3d at 41–42; *Allard K. Lowenstein Int'l Human Rights Project v. United States Dep't of Homeland Sec.*, 626 F.3d 678, 681–82 (2d Cir. 2010)).  This Court has sometimes afforded categorical protection to law enforcement "techniques and procedures" without requiring a showing of risk of circumvention.  *See, e.g., Dent v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 272 (D.D.C. 2013); *Strunk v. United States Dep't of Justice*, 905 F. Supp. 2d 142, 147 (D.D.C. 2012); *McRae v. United States Dep't of Justice*, 869 F. Supp. 2d 151, 168 (D.D.C. 2012); *Keys v. United States*

Decl. ¶ 34; Goldsmith Decl. ¶¶ 10, 11, 12, 14.  "The 'requirement that disclosure risk

circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'"

*Gilman*, 2014 WL 984309, at *10-13 (citing *Pub. Emps.,* 740 F.3d at 204–05 (quoting *Blackwell,*

646 F.3d at 42)).  This requirement is met simply by showing that "release of a document *might*

increase the risk 'that a law will be violated or that past violators will escape legal

consequences.'" *Pub. Emps.,* 740 F.3d at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190,

1193 (D.C.Cir. 2009)) (emphasis added).  The agency need not show "how the law will be

circumvented[;]" it only needs to "demonstrate logically how the release of the requested

information might create a risk of circumvention of the law." *Blackwell,* 646 F.3d at 42 (quoting

*Mayer Brown,* 562 F.3d at 1194 (internal quotation marks and alterations omitted)).

      For example, in *Mayer Brown,* the plaintiff requested records relating to the IRS's

settlement practices in lease-in/lease-out tax cases.  562 F.3d at 1191.  The records contained

"settlement strategies and objectives, assessments of litigating hazards, [and] acceptable ranges

of percentages for settlement."  *Id*. at 1192.  The D.C. Circuit noted that to meet the

"circumvention" requirement of Exemption 7(E), the agency did not have to show that disclosure

would definitively lead to circumvention of the law, but only that disclosure could reasonably be

---

*Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007).  Defendants maintain that, as
these and other courts have recognized, FOIA Exemption 7(E) affords categorical protection to
generally unknown law enforcement techniques and procedures.  *See Elec. Frontier Found. v.
United States Dep't of Homeland Security*, No. C 12-5580 (PJH), 2014 WL 1320234, at *3 (N.D.
Cal. March 31, 2014) (explaining why "basic rules of grammar and punctuation" and the "history
of the statute's amendments" demonstrate that the risk of circumvention requirement does not
apply to techniques and procedures).  Regardless of whether the risk of circumvention
requirement applies to "techniques and procedures," the D.C. Circuit has said that it might not
"matter[] much in practice . . .  given the low bar posed by the 'risk circumvention of the law'
requirement[.]"  *Pub. Emps.*, 740 F.3d at 205 n.4.

expected to create a risk of circumvention. *Id.* at 1193.[8]  In holding that the records were exempt under 7(E), the Court noted that the records, although not a "blueprint for tax shelter schemes . . . could encourage decisions to violate the law or evade punishment" because "information about acceptable settlement ranges" provided information to potential tax evaders that could assist them in making decisions about whether to violate the tax laws. *Id.*  Similarly, information about "[l]itigation hazards" and vulnerabilities of the IRS in prosecuting tax cases could inform potential tax evaders "how to best structure an evasion so as to avoid the maximum enforcement efforts of the IRS." *Id.* at 1193-94.  Indeed, it is well-established that disclosing records describing an agency's procedures for enforcing the law could undermine those procedures and reasonably create a risk of circumvention of the law.  *See, e.g., Morley*, 508 F.3d at 1129 ("It is self-evident that information revealing security clearance procedures could render those procedures vulnerable[.]"); *Gilman*, 2014 WL 984309, at *11 (information about "how CBP [Customs and Border Protection] officials assess vulnerable areas along the border" exempt under 7(E) because it could be used to "'encourage decisions to violate the law or evade punishment.'" (quoting *Mayer Brown*, 562 F.3d at 1193)); *Showing Animals Respect & Kindness,* 730 F. Supp. 2d at 199-200 (disclosure of records revealing "specific details of surveillance techniques" not required because it "could compromise [the agency's] ability to conduct future investigations"); *Strunk,* 905 F. Supp. 2d at 147 (release of computer codes could

---

[8] Indeed, the D.C. Circuit made clear that this requirements sets a very low bar, explaining that "the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown*, 562 F.3d at 1194.

reveal how Customs and Border Patrol's system works, which could be used by individuals "to alter their behavior to mislead law enforcement and avoid detection").

Here, disclosure of the FCD would similarly create a risk of circumvention of the law. Information about the "legal strategies that in-the-field prosecutors may and do employ during the course of criminal proceedings" not only "give defense counsel an unfair advantage over the prosecution," but also "some criminal defendants may circumvent the law and escape punishment by modifying their behavior, hiding incriminating evidence, or worse."  Goldsmith Decl. ¶¶ 6, 10-11.  Since the book includes information about "the limitations of certain arguments that prosecutors could make" and how prosecutors can counter "defense counsel tactics and protect Government investigations and prosecutions," Gerson Decl. ¶ 21, and describes procedures to "protect witnesses … [and to] obtain electronic and other forms of evidence," Goldsmith Decl. ¶ 9, individuals could alter their behavior to defeat these techniques, procedures, and guidelines and evade law enforcement, Goldsmith Decl. ¶ 11.  *Cf. Mayer Brown*, 562 F.3d at 1193-94 (information about "[l]itigation hazards" and vulnerabilities of the IRS in prosecuting tax cases could inform potential tax evaders "how to best structure an evasion so as to avoid the maximum enforcement efforts of the IRS."); *Soghoian*, 885 F. Supp. 2d at 75 (records describing "the various legal and investigative techniques that should be considered by investigators and Assistant United States Attorneys in conducting their criminal investigations … could provide criminals the information necessary to evade or thwart detection[.]").  In addition, individuals could use the information in the book to get disclosures prematurely, or "obtain discovery beyond that which they are entitled[,]" thereby increasing the risk that "ongoing investigations could be compromised, such as by disclosing the identity of undercover officers and confidential informants[,]" increasing the "likelihood of witness intimidation and retaliation

24

… [and] that documents, electronically stored information, and other evidence might be destroyed by criminal who become aware of ongoing investigations[,]" or "that national security will be breached[.]"  Goldsmith Decl. ¶ 11.  The "carefully constructed balance" that has been "created over decades" between "ensuring the protection of a defendant's constitutional rights" on the one hand, and "safeguarding the equally important public interest in a criminal trial process that reaches timely and just results, safeguards victims and witnesses from retaliation or intimidation . . . [and] protects on-going criminal investigations from undue interference" on the other hand, should not be disturbed by disclosing the FCD.  *Id.* ¶ 10.

Disclosing information about how prosecutors conduct their investigations and prosecutions, how they protect witnesses, how they obtain evidence, how they manage criminal discovery, and how they should counter defense counsel tactics, could undermine these law enforcement processes.  The candid assessments about discovery rules, cases, and practices included in the FCD were prepared exclusively for prosecutors, in order to support the Government's investigations and prosecutions.  Disclosure of this information could allow individual to modify their behavior to avoid detection, hide information, and defeat proper attempts by prosecutors to obtain necessary evidence and to protect witnesses and national security.  Because FOIA is not a tool for criminal defendants and their counsel to access privileged, confidential materials describing the prosecution's litigation strategies and the procedures prosecutors may and do employ in carrying out their law enforcement duties, Defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor.

Dated:  June 11, 2014                 Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Director

/s/ *Héctor G. Bladuell*_____
HECTOR G. BLADUELL
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4470
Facsimile: (202) 616-8460
Email:  hector.bladuell@usdoj.gov

*Counsel for Defendants*

26