UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,<br><br>    Plaintiff,<br><br>    v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS *et al.*,<br><br>    Defendants. | Civil Action No. 14-269 (CKK) |

MEMORANDUM OPINION
(December 18, 2014)

The National Association of Criminal Defense Lawyers ("NACDL") filed a FOIA request for the Department of Justice's ("DOJ") Federal Criminal Discovery Manual, also known as the "Blue Book." The DOJ denied NACDL's request in full, claiming that the entire Blue Book is exempt under Exemption 5 and Exemption 7(E) of the Freedom of Information Act ("FOIA"). NACDL subsequently filed suit against the Executive Office for United States Attorneys ("EOUSA") and the DOJ on February 21, 2014, seeking release of the Blue Book. Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment.[1] Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole, the Court finds that the Blue Book is attorney work-

---

[1] Vaughn Index, ECF No. [12]; Defendants' Motion for Summary Judgment ("Defs.' Mot."), ECF No. [13]; Plaintiffs' Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Cross-Mot."), ECF No. [16]; Defendants' Reply to Opposition to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Defs.' Reply"), ECF No. [20]; Plaintiff's Reply in Support of Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. [24]; Plaintiff's Notice of Supplemental Authority ("Notice of Supp. Authority"), ECF No. [19].

product protected from disclosure pursuant to FOIA Exemption 5.  Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment.

## I.  BACKGROUND

On December 20, 2012, NACDL filed a FOIA request with the DOJ seeking "the Office of Legal Education publication entitled 'Federal Criminal Discovery'" which "may also be referred to as *The Federal Criminal Discovery Blue Book*."  Compl. ¶ 33; Ex. A (FOIA Request).  On February 28, 2013, the DOJ denied NACDL's FOIA request in full citing FOIA Exemptions 5 and 7(E) as the basis for its denial.  Compl. ¶ 35; Ex. B (Denial of FOIA Request).  NACDL appealed the DOJ's denial of its FOIA request on April 26, 2013.  Compl. ¶ 36; Ex. C (FOIA Appeal).  NACDL's appeal was denied on June 25, 2013.  Compl. ¶ 38; Ex. E (Denial of FOIA Appeal).  In denying NACDL's appeal, the Office of Information Policy affirmed the DOJ's initial denial of Plaintiff's FOIA request on partly modified grounds, citing only to FOIA Exemption 5's protection of attorney work-product as the proper basis for the DOJ's withholding of the Blue Book.  *Id.*

On February 21, 2014, NACDL filed suit in this Court claiming that the DOJ improperly withheld the Blue Book under FOIA Exemptions 5 and 7(E).  Compl. ¶¶ 39, 45.  Defendants subsequently filed a Motion for Summary Judgment arguing that the Blue Book is exempt from disclosure in its entirety under FOIA Exemptions 5 and 7(E).  Specifically, Defendants invoke Exemption 5's attorney work-product privilege.  Plaintiff then filed a Cross-Motion for Summary Judgment.  Both motions have been fully briefed and are now ripe for review.

## II.  LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation and internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation and internal quotation marks omitted), *cert. denied*, 507 U.S. 984 (1993). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1261-62 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S.Ct. at 1262 (citations and internal quotation marks omitted).

When presented with a motion for summary judgment in a FOIA case, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag. Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption,

and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With these principles in mind, the Court turns to the merits of the parties' motions.

### III. DISCUSSION

As an initial matter, the parties dispute the nature of the contents of the Blue Book. NACDL contends that the Blue Book contains only statements of agency policy and general, neutral guidelines regarding prosecutors' disclosure obligations. NACDL describes the Blue Book as a manual "which comprehensively covers the law, policy, and practice of prosecutors' disclosure obligations." Pl.'s Cross-Mot. at 2. The DOJ, on the other hand, contends that the manual contains legal advice, strategies, and arguments for defeating discovery claims. The DOJ describes the Blue Book as follows:

> This book was created exclusively for federal prosecutors to provide them advice and guidance regarding discovery-related issues that arise in criminal investigation and prosecutions. In specific part, it advises federal prosecutors about how to comply with their discovery obligations, how to avoid and handle discovery disputes, and how to protect and represent the Government's interests in litigation. In so doing, the [Blue Book] describes law enforcement techniques, procedures, and guidelines, the disclosure of which could create a risk of circumvention of the law.

Defs.' Mot. at 1. The parties' differing descriptions of the Blue Book's contents affect the

applicability of Exemption 5 and 7(E) to the Blue Book. Accordingly, on October 22, 2014, the Court requested that the Blue Book be provided for *in camera* review. Based on the Court's *in camera* review, the Court finds, for the reasons given below, that the Blue Book constitutes attorney-work product and is exempt in its entirety under FOIA Exemption 5. As the Court finds the Blue Book is exempt from disclosure pursuant to FOIA Exemption 5, the Court need not reach the DOJ's alternative basis for withholding the Blue Book—Exemption 7(E).

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 contains two main privileges, the attorney work-product privilege and the deliberative process privilege. The Court shall exclusively focus on the attorney work-product privilege as this is the only privilege that the DOJ has invoked. The attorney-work product privilege covers material that "can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (internal citation and quotation marks omitted). The privilege's purpose is to protect the adversarial trial process by insulating attorneys' preparations from scrutiny. *See Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F.Supp.2d 121, 142 (D.D.C. 2013) (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978) ("[T]he purpose of the privilege is to encourage effective legal representation *within the framework of the adversary system* by removing counsel's fears that his thoughts and information will be invaded by his adversary." (emphasis in original)). Accordingly, the attorney work-product privilege "should be interpreted broadly and held largely inviolate." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005).

The District of Columbia Circuit has recognized two categories of documents as

"prepared in anticipation of litigation" and thus protected by the attorney work-product privilege. *Shapiro v. Dep't of Justice*, 969 F.Supp.2d 18, 27, 30 (D.D.C. 2013). Documents are protected if they are "prepared by government lawyers in connection with active investigations of potential wrongdoing," and there is "a *specific* claim supported by concrete facts which would likely lead to litigation in mind." *In re Sealed Case*, 146 F.3d at 885, 887 (internal citations and quotation marks omitted) (emphasis added). Documents will also be considered "prepared in anticipation of litigation" and protected if they are prepared by an attorney "render[ing] legal advice in order to protect the client from future litigation about a particular transaction." *Id.* at 885. In such a situation, no specific claim is needed. *Id.* In the context of a government agency, a document will be protected if its authors acted "as legal advisors protecting their agency clients from the possibility of future litigation." *Id.*; *see also Delaney, Migdail &Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987) (memoranda protected which "advise[d] the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome"). Conversely, documents "like an agency manual, fleshing out the meaning of the statute [the agency is] authorized to enforce" and offering "mere neutral objective analyses of agency regulations" are not protected by the attorney work-product privilege. *Delaney*, 826 F.2d at 127. The operative test is a functional test: "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d at 30-31; *Delaney*, 826 F.2d at 127 (identifying "the function of the documents as the critical issue").

Importantly, "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch*, 432 F.3d at 371 ("factual material is itself privileged when it appears

within documents that are attorney work product"); *see also Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) ("[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."). This is true even if portions of an attorney work-product contain agency working law. The agency working law need not be released if the function of the document in which the working law is contained makes it attorney work-product. *See Tax Analysts v. IRS*, 294 F.3d 71, 73 (D.C. Cir. 2002) (affirming district court's judgment that the "IRS need not segregate and release agency working law from [Technical Assistance memoranda] withheld pursuant to Exemption 5's attorney work product privilege").

Plaintiff argues that the Blue Book is not covered by the attorney work-product privilege because "it was created to convey DOJ's general policies on, and interpretations of, laws it is already charged with enforcing—namely its constitutional *Brady* obligations." Pl.'s Cross-Mot. at 24. Plaintiff contends that the "DOJ has made no showing that the purpose of the Blue Book was to shield the agency from future litigation related to a particular transaction or specific government program or policy." *Id.* In other words, Plaintiff believes the Blue Book is not protected by the attorney work-product privilege because it simply conveys "general agency policy" divorced from potential litigation. *Id.* at 25. Having conducted an *in camera* review of the book, the Court respectfully disagrees with Plaintiff's analysis and finds that the Blue Book was prepared by attorneys "in anticipation of litigation" as defined by courts in this Circuit.

The Blue Book is a "litigation manual" available only to DOJ personnel that "advise[s] federal prosecutors on the legal sources of their discovery obligations as well as the types of discovery related claims and issues that they would confront in criminal investigations and prosecutions." Vaughn Index at 1. As such, the Blue Book is most likely to fall into the second


category of protected documents—i.e. documents prepared in anticipation of foreseeable litigation against the agency—and not the category of documents related to active investigations of potential wrongdoing that require specific claims.  *See ACLU Foundation v. Dep't of Justice*, No. 12-7412, 2014 WL 956303, at *6 (S.D.N.Y. Mar. 11, 2014) (rejecting argument that "because the memoranda at issue were written for prosecutors and discuss criminal investigations, the specific claim requirement applies").  Specifically, the Blue Book

> encourages certain practices and discourages others; identifies factors prosecutors should consider in making particular decisions; describes the types of claims/tactics defense counsel raise/employ and provides advice and authority to counter those claims/tactics; evaluates the merits of arguments prosecutors can make; and illustrates with cases pitfalls for prosecutors to avoid, including arguments available in case prosecutors fall into those pitfalls.

Vaughn Index at 1-2. The Court finds the function of the Blue Book analogous to other agency manuals and memoranda which courts in this Circuit have found to be "prepared in anticipation of litigation."  For example, in *Schiller v. National Labor Relations Board*, the United States Court of Appeals for the District of Columbia Circuit found that documents containing "tips for handling unfair labor practice cases that could affect subsequent EAJA [(Equal Access to Justice Act)] litigation," and "advice on how to build an EAJA defense and how to litigate EAJA cases" fell within the attorney work-product privilege because they were "prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."  964 F.2d 1205, 1208 (D.C. Cir. 1992).

Similarly, in *Soghoian v. Department of Justice*, District Court Judge Amy Berman Jackson found DOJ documents "discussing legal strategies in investigations involving electronic surveillance" and an "internal manual . . . contain[ing] legal guidance for attorneys conducting investigations" that recommended "certain legal approaches and strategies over others" were

protected by the attorney work-product privilege because they "present the legal strategies of the DOJ attorneys who will be required to litigate on behalf of the government."  885 F.Supp.2d 62, 72-73 (D.D.C. 2012).  *See also ACLU*, 2014 WL 956303, at *1, *6 (protecting memoranda "discuss[ing] the ways in which GPS tracking devices are employed in federal criminal investigations" because they "discuss not how prosecutors should interpret and apply the laws they are charged with enforcing—the criminal code—but how to defend the Government against accusations of unlawful searches or seizures"); *Automobile Imports of America, Inc. v. FTC*, No. 81-3205, 1982 WL 1905, *1 (D.D.C. Sept. 28, 1982) (protecting memorandum prepared by an FTC staff attorney that examined the merits of possible remedies in automobile defect cases).  Likewise, here, the Blue Book provides background information and instructions on discovery practices and advice, strategy, and defenses for litigation related to the government's discovery obligations to attorneys who will be required to litigate on the government's behalf.  Just like the documents protected in *Schiller*, the Blue Book is a " 'how to' manual[ ] for building defenses and litigating cases under the [relevant discovery statutes] and disclose[s] explicit agency strategy."  *Shapiro*, 969 F.Supp.2d at 37.

Plaintiff's attempts to liken the Blue Book to the documents rejected by the court as attorney work-product in *Jordan v. Department of Justice* and *Judicial Watch, Inc. v. Department of Homeland Security* are unavailing.  Both cases involved agency memoranda providing general standards to guide government lawyers in the exercise of their prosecutorial discretion.  While Plaintiff correctly notes that each case held that the memoranda were not attorney work-product because they were not "prepared in anticipation of a particular trial," but were "promulgated as general standards to guide the Government lawyers," Plaintiff's narrow focus on this language is misguided.  *Jordan*, 591 F.2d at 775; *see also Judicial Watch, Inc.*, 926

F.Supp.2d at 142. The *Jordan* and *Judicial Watch* courts ultimately found that the memoranda were not attorney work-product, not simply because they weren't prepared for a particular case, but because "they were not even prepared in anticipation *of trials in general*." *Jordan*, 591 F.2d at 777 (emphasis added); *see also Judicial Watch*, 926 F.Supp.2d at 142 (same). The *Jordan* and *Judicial Watch* courts reasoned that the attorney work-product "privilege focuses on the integrity of the *adversary trial process* itself." *Jordan*, 591 F.2d at 775 (emphasis added); *Judicial Watch*, 926 F.Supp.2d at 142. Since "the guidelines and instructions set forth in the [memoranda] d[id] not relate to the conduct of either on-going *or prospective trials*," the courts found the attorney work-product privilege could not be invoked to preclude their disclosure. *Jordan*, 591 F.2d at 775-76 (emphasis added); *Judicial Watch*, 926 F.Supp.2d at 142. The Blue Book, by contrast, directly relates to conduct in the adversary trial process since it provides guidelines and strategies for government prosecutors to consider in disclosing discovery and litigating against challenges to their discovery practices. The Blue Book is entirely focused on a bedrock transaction in the adversarial trial process—discovery.

Plaintiff also cites to *American Immigration Council v. Department of Homeland Security* and *Shapiro v. Department of Justice*. In the former case, District Court Judge James E. Boasberg held that PowerPoint presentations prepared by Department of Homeland Security attorneys "to teach USCIS employees how to interact with private attorneys" in agency proceedings before adjudicators, were not protected by the attorney work-product privilege because their creators "were not worrying about litigation ensuing from any 'particular transaction[]' . . . or planning strategy for USCIS's case" in a specific suit; instead they were "convey[ing] routine agency policies." *Am. Immigration Council v. Dep't of Homeland Security,* 905 F.Supp.2d 206, 222 (D.D.C. 2012). Similarly, in *Shapiro*, District Court Judge Beryl

Howell denied work-product protection to documents "summari[zing] cases and key issues in certain cases" in a "FOIA Brief Bank" because they were "untethered to any particular claim in litigation" and did not reveal any "legal strategy or other case-specific legal considerations." *Shapiro*, 969 F. Supp. 2d at 34–37.  The Blue Book is unlike either of these sets of documents because it deals specifically with discovery transactions in criminal litigation with the goal of preventing litigation arising from these transactions.  *See ACLU*, 2014 WL 956303, at *6 ("It is immaterial that these claims often arise in the context of suppression motions by criminal defendants instead of lawsuits filed against the Government.").  Although the Blue Book does contain general background information and agency policies regarding the government's discovery obligations, the Court finds that it contains sufficient advice and litigation strategy for use in actual litigation to qualify as attorney work-product, especially in light of the fact that the overarching purpose driving the contents and structure of the book was to prevent discovery violations and litigation arising from discovery transactions.  *See* Defs.' Ex. 1 (Gerson Decl.), ¶¶ 17-18 (describing the Blue Book as a step taken to "address [discovery] failures and to ensure that similar problems did not arise in future investigations and prosecutions").

During the course of the briefing of the present cross-motions for summary judgment, Plaintiff filed a Notice of Supplemental Authority citing to a recent decision by Judge Ancer L. Haggerty of the District of Oregon-Portland Division in criminal case *United States v. Pederson*, Case No. 12-431-HA.  Over the government's objection, Judge Haggerty ordered the government to produce the Blue Book to the defense pursuant to a protective order in anticipation of a hearing concerning defendant's motion for a finding of bad faith.  Notice of Supp. Authority, Ex. C at 2.  Judge Haggerty rejected the government's argument that the attorney work-product privilege protected disclosure of the Blue Book to defendant, reasoning

that "the D.C. Circuit has held *only* 'where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.'" *Id.* at 5 (emphasis added).  Respectfully, this Court will not follow the District of Oregon's reasoning because the Court finds the analysis incomplete.  As discussed above, the District of Columbia Circuit has recognized *two* scenarios in which a document will be considered prepared "in anticipation of litigation."  Judge Haggerty's decision appears to operate on the understanding that only one of these scenarios is a viable scenario for a document to be characterized as prepared "in anticipation of litigation."  Judge Haggerty found—just like the Court finds here —that the Blue Book was not prepared "in the course of an active investigation" with a "specific possible violation by a specific party" in mind.  *Id.*  Accordingly, Judge Haggerty concluded that the Blue Book was not protected by the attorney work-product privilege.  *Id.*  However, Judge Haggerty did not evaluate whether the Blue Book was a privileged attorney work-product because it was prepared to "protect [ ] agency clients from the possibility of future litigation"—the operative category here.  *In re Sealed Case*, 146 F.3d at 885.  Accordingly, the Court is not persuaded by the reasoning in the District of Oregon decision.

Finally, the Court rejects Plaintiff's argument that the Blue Book must be disclosed pursuant to 5 U.S.C. § 552(a)(2) because it constitutes the DOJ's "working law" or "secret law" with respect to the government's discovery obligations.[2]  Pl.'s Cross-Mot. at 9-10.  In arguing that the Blue Book constitutes agency working law, Plaintiff relies on DOJ officials' testimony

---

[2] The "working law" concept reflects "aversion to 'secret (agency) law.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975). Plaintiff uses "working law" and "secret law" interchangeably. *See* Pl.'s Cross-Mot. at 15.  For the sake of clarity, the Court will only refer to "working law."

before Congress that the Blue Book was intended as a substitute for Congressional legislation concerning the government's disclosure obligations in criminal discovery. *Id.* at 15-16. First, simply because the DOJ decided to police discovery obligations internally instead of through passage of federal legislation does not transfer the agency's internal policing manual into agency working law. Second, even if the Blue Book constitutes or contains the DOJ's working law,[3] which, pursuant to § 552(a)(2), must proactively be disclosed, FOIA "expressly states . . . that the disclosure obligation 'does not apply' to those documents described in the nine enumerated exempted categories listed in § 552(b)," which includes Exemption 5.[4] *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 137 (1975); *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 n.21 (1975) (even if a document is "expressly made disclosable" under § 552(a)(2), "a conclusion that the document [is] within Exemption 5 would be dispositive in the Government's favor, since the Act 'does not apply' to such documents"). It is true that in *Sears* the Supreme Court stated that it would be "reluctant" to hold that the Exemption 5 privilege would apply to documents covered by § 552(a)(2). *Sears*, 421 U.S. at 153-154. However, in *Federal Open Market Committee of Federal Reserve System v. Merrill*, the Supreme Court clarified that "these observations . . . were made in the course of a discussion of the privilege for predecisional communications" and "the kind of mutually exclusive relationship between final opinions and statements of policy, on one hand, and predecisional communications, on the other, does not necessarily exist between final statements of policy and other Exemption 5 privileges."

---

[3] The Court acknowledges that Defendants argued in their briefs that the Blue Book is not working law. *See* Defs.' Reply at 5-9. The Court need not reach this issue, however, because the Court has found that Exemption 5 protects the Blue Book from disclosure even if it constitutes or contains agency working law.

[4] The Supreme Court in *Sears* did, however, hold that "with respect . . . to 'final opinions' [which must be proactively disclosed pursuant to § 552(a)(2)], Exemption 5 can never apply." *Sears*, 421 U.S. at 153-54.

443 U.S. 340, 360 n.23 (1979).  The Court went on to "note that *Sears* itself held that a memorandum subject to the affirmative disclosure requirement of § 552(a)(2) was nevertheless shielded from disclosure under Exemption 5 because it contained a privileged attorney's work product." *Id.*  Accordingly, as long as the Blue Book is considered attorney work-product, which the Court has already found that it is, FOIA Exemption 5 still protects the book from disclosure. *See id.* ("Our conclusion that the Domestic Policy Directives are at least potentially eligible for protection under Exemption 5 does not conflict with the District Court's finding that the Directives are "statements of general policy . . . formulated and adopted by the agency," which must be "currently publish[ed]" in the Federal Register pursuant to 5 U.S.C. § 552(a)(1).").  In addition, there is no obligation on the DOJ to segregate and release any working law the Blue Book contains.  *See Tax Analysts v. IRS*, 391 F. Supp. 2d 122, 128 (D.D.C. 2005).

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the Department of Justice's Blue Book is attorney work-product protected from disclosure pursuant to FOIA Exemption 5.  As the Blue Book is fully protected, Defendants are not required to evaluate whether all reasonably segregable portions of the requested document have been released.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Cross-Motion for Summary Judgment is DENIED. An appropriate Order accompanies this Memorandum Opinion.

.

   /s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE