# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS,

    Plaintiff,

       v.

EXECUTIVE OFFICE FOR UNITED STATES
ATTORNEYS *et al.*,

    Defendants.

**Civil Action No. 14-269 (CKK)**

# ORDER
(November 15, 2017)

The National Association of Criminal Defense Lawyers ("NACDL") submitted a FOIA request for the Department of Justice's ("DOJ") Federal Criminal Discovery Manual, also known as the "Blue Book."  The DOJ denied NACDL's request in full, claiming that the entire Blue Book was exempt under Exemptions 5 and 7(E) of FOIA.  NACDL subsequently filed suit against the Executive Office for United States Attorneys ("EOUSA") and the DOJ seeking release of the Blue Book.  In a December 18, 2014 Memorandum Opinion, this Court found that the Blue Book was attorney work product protected from disclosure pursuant to FOIA Exemption 5 and accordingly granted Defendants' Motion for Summary Judgment and denied Plaintiff's Cross-Motion for Summary Judgment.  NACDL appealed.

The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") affirmed the Court's judgment that the Blue Book contained attorney work product, but remanded for an assessment of whether it also contained any nonexempt and reasonably segregable statements of the Government's discovery policy.  Specifically, the D.C. Circuit stated:

> . . . we think it appropriate to assess whether the Blue Book
> contains nonexempt statements of policy that are reasonably
> segregable from the protected attorney work product and that
> therefore should be disclosed. Because the district court did not
> consider whether the Blue Book contains reasonably segregable
> statements of the government's discovery policy, we remand for
> that court to conduct that analysis in the first instance. Such an
> analysis, we have explained, does not call for parsing the Blue
> Book "line-by-line" or segregating material "dispersed throughout
> the document." *Mead Data*, 566 F.2d at 261. Instead, the emphasis
> is on segregation of non-exempt material found in "logically
> divisible sections."

*Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for United States Attorneys*, 844 F.3d 246, 257 (D.C. Cir. 2016).

On remand, this Court ordered the parties to brief this narrow segregability issue. Defendants submitted a supplemental declaration from Andrew D. Goldsmith, ECF No. 38-1. The declaration explains that the Defendants concluded that Chapter One of the Blue Book (entitled "Department of Justice Policy, Positions, and Guidance") contained statements of the Government's discovery policy and that Defendants had accordingly produced that chapter to Plaintiff. *Id.* at ¶¶ 16-17. Mr. Goldsmith also conceded that the Blue Book's cover page, a portion of its table of contents, and its subsections 6.13.2 and 6.13.3 were nonexempt and segregable. *Id.* at ¶¶ 18-22. Mr. Goldsmith represented that there were no further reasonably segregable statements of discovery policy in the Blue Book. *Id.* at ¶ 23.

The Court has conducted a second *in camera* review of the Blue Book to determine whether it contains any additional reasonably segregable statements of the Government's discovery policy. In doing so, the Court has considered the parties' recent pleadings and the opinion of the D.C. Circuit regarding the application of the work product doctrine to the Blue Book. Based on its review, the Court has concluded that several portions of the Blue Book are not protected by Exemption 5, and are reasonably segregable from the exempted portions of that

document. Generally speaking, these portions of the Blue Book are broad statements of the

Government's public criminal discovery policies, which find their genesis in the United States

Attorneys' Manual, public discovery policies issued by former Deputy Attorney General David

Ogden, and the Government's public *Giglio* policy.  They include:

- Section 2.1, entitled "Introduction," on pages 15-16 (**not** including the final paragraph, beginning "The prosecution . . .")
- Section 3.1, entitled "Introduction," on page 29.
- The second full paragraph on page 201, beginning with "The Department . . ."
- The first paragraph on page 228, beginning with "As described . . ."
- The first paragraph on page 235, beginning with "Department of . . ."
- The last paragraph on page 238, beginning with "Once again . . ."
- The last paragraph on page 249, beginning with "Department of . . ."
- Section 6.12.9, entitled "Department of Justice Policy," on pages 254-55.
- The last paragraph on page 256, extending on to page 257, beginning with "In 1996 . . ."
- Section 6.13.5, entitled "*Giglio* Policy—What Potential Impeachment Information Must be Disclosed to Prosecutors by Investigating Agencies?" on pages 259-60 (**not** including footnote 64).
- Section 6.13.6, entitled "Interpreting the *Giglio* Policy in Light of USAM 9-5.001," on page 260 (**not** including the "Practice note").
- Section 6.13.7, entitled "*Giglio* Policy—Communication Between Prosecuting Offices and Agencies Regarding Disclosures," on page 261.
- Section 6.13.10, entitled "*Giglio* Policy—Implementation," on page 263.
- Section 6.13.12, entitled "Candid Conversation Between Prosecutor and Law Enforcement Witness," on page 264 (**not** including the "Practice note").

To the extent the Blue Book contains any other nonexempt statements of the Government's

discovery policy, the Court has concluded that any such statements are not reasonably segregable

from the exempt portions of the document.

Because the Court has concluded that the portions of the Blue Book listed above are not

covered by Exemption 5, it must now assess for the first time whether those portions are

protected from disclosure by Exemption 7(E).  That exemption, as relevant to the portions of the

Blue Book listed above, applies to "records or information compiled for law enforcement

purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To establish that this exemption applies, Defendants "must demonstrate . . . that release of [the] document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (quoting *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

This exemption does not apply to the narrow portions of the Blue Book that the Court has identified above. Defendants argue that disclosure of the Blue Book would risk circumvention of the law because it contains nonpublic legal strategy and practice tips for prosecutors that, if disclosed, would give criminal defendants insight into the thought processes of prosecutors and therefore undermine future criminal prosecutions. Although that argument is persuasive with respect to much of the Blue Book, the Court is not persuaded that it applies to the statements of discovery policy in the narrow portions of that document that the Court has found are not protected by Exemption 5. As stated above, these portions of the Blue Book are broad statements of the Government's public criminal discovery policies. They do not contain nonpublic litigation strategy or other forms of work product that would give criminal defendants any sort of unfair advantage in future prosecutions. Because their disclosure could not reasonably be expected to risk circumvention of the law, they are not protected by Exemption 7(E). *See PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 251–53 (D.C. Cir. 1993) (holding that agency had not justified the withholding in full of a manual that contained a "discussion of

search and seizure law and [a] digest of useful caselaw" because it had not explained how those portions would "create[ ] a risk of circumvention of the law within the (b)(7)(E) exemption").

Accordingly, the Court will **GRANT** both parties summary judgment on the remaining issues in this case **IN PART**.  The Court **GRANTS** Plaintiff summary judgment in that it **ORDERS** Defendants to release the portions of the Blue Book listed in this Order.  The Court **GRANTS** Defendants summary judgment in that it holds that, beyond those portions of the Blue Book listed in this Order, there are no other nonexempt and reasonably segregable portions of that document that Defendants must disclose.  In order to avoid any confusion, the precise portions of the Blue Book that the Court is ordering be disclosed are contained in an Appendix that is being filed simultaneously with this Order.  That Appendix is being filed under seal and *ex parte* so that Defendants can have an opportunity to consider whether to appeal this Order before disclosing this material to Plaintiff.  If Defendants opt not to appeal, or the time to appeal has run, they shall file a notice with the Court indicating that the Appendix can be made public.

**SO ORDERED.**

*This is a final, appealable order.*

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE