14-cv-269

# Appendix to November 15, 2017 Order

# UNDER SEAL

# *EX PARTE*

'N)

## 2.1 Introduction

Department policy requires that, in preparing for trial, federal prosecutors "seek all exculpatory and impeachment information *from all members of the prosecution team*," an entity that "include[s] federal, state, and local law enforcement officers and other government officials

participating in the investigation and prosecution of the criminal case against the defendant." United States Attorneys' Manual (USAM) 9-5.001 (emphasis added). The duty to search is not limited to exculpatory and impeachment information under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972); it also extends to information required to be disclosed under Federal Rules of Criminal Procedure 16 and 26.2, as well as under the Jencks Act (18 U.S.C. § 3500).[2] Because a prosecutor must exercise due diligence in locating, obtaining, and producing all discoverable material, generally all potentially discoverable material within the possession, custody, or control of the prosecution team should be reviewed. *See Criminal Resource Manual* 165 ("Guidance for Prosecutors Regarding Criminal Discovery"), issued on January 4, 2010, by Deputy Attorney General David Ogden (Ogden Memo), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm00165.htm, at 4. Although a prosecutor may delegate others to conduct the search for potentially discoverable material under criteria he sets, he should not delegate the disclosure determination itself. *Id.* at 8.

In most cases, the prosecution team will include the agents and law enforcement officers within the district handling the case. The team will likely be broader in multi-district investigations; in investigations involving both Assistant United States Attorneys and prosecutors from a Department litigating component; in cases with parallel criminal and civil proceedings; in complex cases involving parallel proceedings with regulatory agencies; and in cases involving multi-agency task forces or state law enforcement agencies. Ogden Memo at 2-3.

---

[2] The government's constitutional discovery obligations under *Brady* and *Giglio* are discussed in Chapter 6 of this Manual. Its discovery obligations under Fed. R. Crim. P. 16 are discussed in Chapter 3 of this Manual, and its obligations under Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500 (the Jencks Act) in Chapter 4.

## 3.1 Introduction

As previously noted, the Department of Justice encourages broad and comprehensive disclosures in criminal cases.[6] These disclosures are governed by case law, statutes, and the Federal Rules of Criminal Procedure. This Chapter examines Federal Criminal Procedure Rule 16, which mandates disclosure of specified information and items when requested by the defendant. A prosecutor's duty to disclose information subject to Rule 16 is ongoing and continues throughout trial, so prosecutors should be cognizant of that duty as new information is developed or obtained. Finally, even if Rule 16 does not require the disclosure of particular information, prosecutors should carefully consider whether disclosure is required under *Brady*, *Giglio*, the Jencks Act, or any other discovery obligation.

[6] Memorandum from David Ogden on Guidance for Prosecutors Regarding Criminal Discovery to Department Prosecutors (Jan. 4, 2010), *available at* http://www.justice.gov/dag/discovery-guidance.html.

The Department of Justice has adopted a specific policy to govern the disclosure of potentially impeaching material in the personnel files of federal law enforcement witnesses. This policy requires covered witnesses to inform prosecutors of such information, and establishes procedures for obtaining personnel file-review by the employing agency. Although the policy applies only to Department of Justice and U.S. Treasury investigative agencies, many other federal, state and local agencies also provide such information on their employees who will be affiants or witnesses.

As described in more detail in Chapter 1 of this Manual, the Department of Justice Policy (USAM 9-5.001 D.1) is to disclose exculpatory information "reasonably promptly" after it is discovered.



Department of Justice policy requires that: "A prosecutor must disclose information that ... might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime." USAM 9-5.001 C.2.

Once again, the Department of Justice policy imposes a broader disclosure obligation on federal prosecutors, requiring that exculpatory and impeachment information that casts doubt upon proof of an aggravating factor at sentencing must be disclosed no later than the court's initial presentence investigation. *See* USAM 9-5.001 D.3.

Department of Justice policy requires that federal prosecutors and investigators memorialize any material variances in a witness's statements, even if within the same interview. Ogden Memo, Step 1(B)(8)(a). Such differences should then be turned over to the defense as potential impeachment evidence. Additionally, while pretrial meetings with witnesses need not be memorialized, the government should disclose any newly revealed exculpatory or impeachment information, including inconsistent statements. *Id.*, Step 1(B)(8)(b).

### 6.12.9   Department of Justice Policy

The timing of *Giglio* disclosures is discussed in Section 6.8 of this Chapter and Chapter 1 of this Manual. Note that under USAM 9-5.001(D)(4), "[a] prosecutor must obtain supervisory approval not to disclose impeachment information before trial.... Upon such approval, notice must be provided to the defendant of the time and manner by which disclosure of the exculpatory or impeachment information will be made." USAM 9-5.001(D)(4). Also note the further guidance on the timing and form of disclosures in the Ogden Memo, at Step 3, including some countervailing considerations to early disclosure, such as victim

and witness protection, witness privacy interests, and national security interests, among others. Prosecutors should always maintain a contemporary record of disclosures.

In 1996, the Attorney General issued a formal department discovery policy regarding federal law enforcement witnesses. *See* USAM 9-5.100, "Policy Regarding the Disclosure to Prosecutors of Potential Impeachment Information Concerning Law Enforcement Agency Witnesses ('*Giglio* Policy')." The policy established a two-pronged mechanism for ensuring that prosecutors are able to obtain all potential impeachment information relating to their law enforcement witnesses. It first required that law enforcement witnesses inform prosecutors of

any potential impeachment information "as early as possible prior to providing a sworn statement or testimony in any criminal investigation or case." (*Giglio* Policy, Paragraph 1). Second, it established procedures for obtaining personnel-file review by the agency employing the law enforcement witness.

### 6.13.5 *Giglio* Policy—What Potential Impeachment Information Must Be Disclosed to Prosecutors By Investigative Agencies?

The Preface to the current *Giglio* policy broadly defines the categories of information that investigative agencies must disclose to prosecutors:

> The exact parameters of potential impeachment information are not easily determined. Potential impeachment information, however, has been generally defined as impeaching information which is material to the defense. It also includes information that either casts a substantial doubt upon the accuracy of any evidence—including witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information may include but is not strictly limited to: (a) specific instances of conduct of a witness for the purpose of attacking the witness' credibility or character for truthfulness; (b) evidence in the form of opinion or reputation as to a witness' character for truthfulness; (c) prior inconsistent statements; and (d) information that may be used to suggest that a witness is biased.

As noted in the text, the Policy was not intended to provide an exhaustive definition of impeachment material. Paragraph 5 states that agencies must disclose "(a) any finding of misconduct that reflects upon the truthfulness or possible bias of the employee, including a finding of lack of candor during an administrative inquiry; (b) any past or pending criminal charge brought against the employee[64]; and (c) any credible allegation of misconduct that reflects upon the truthfulness or possible bias of the employee that is the subject of a pending investigation.".

In contrast to the mandatory language of Paragraph 5, Paragraph 6 directs agencies to produce information concerning "allegations that cannot be substantiated, are not credible, or have resulted in the exoneration of an employee" only under special circumstances. This "anti-ambush" provision protects prosecutors from being blind-sided during trial by the introduction of irrelevant and inflammatory information concerning the witness, and enables the prosecutor to protect the agency witness from improper cross-examination that might harm his reputation and the case. The agencies agreed to produce such information:

> (a) when the Requesting Official advises the Agency Official that it is required by a Court decision in the district where the investigation or case is being pursued;

> (b) when, on or after the effective date of this policy: (i) the allegation was made by a federal prosecutor, magistrate judge, or judge; or (ii) the allegation received publicity;

> (c) when the Requesting Official and the Agency Official agree that such disclosure is appropriate, based upon exceptional circumstances involving the nature of the case or the role of the agency witness; or

> (d) when disclosure is otherwise deemed appropriate by the agency.

### 6.13.6   Interpreting the *Giglio* Policy in Light of USAM 9-5.001

Prosecutors and investigative agencies should fulfill their obligations under the *Giglio* policy in light of USAM 9-5.001 "Policy Regarding Disclosure of Exculpatory and Impeachment Information," which establishes "broader standards of disclosure for exculpatory and impeachment information" than required by the constitution and the case law. For example, the USAM policy requires the disclosure of impeachment information "that either casts a substantial doubt upon the accuracy of any evidence ... the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence ... regardless of whether it is likely to make a difference between conviction and acquittal ...." USAM 9-5.001(C)(2). Likewise, the policy applies to "information," whether or not it would "constitute admissible evidence." USAM 9-5.001(C)(3).

### 6.13.7 *Giglio* Policy—Communication Between Prosecuting Offices and Agencies Regarding Disclosures

The *Giglio* policy requires and encourages open communication between the prosecuting office and the investigative agency on how particular impeachment information should be handled. Prosecutors should ensure that a law enforcement witness, and when appropriate his or her supervisor, has an opportunity to be heard on the manner in which potential impeachment information will be handled in court. (*Giglio* Policy, Paragraph 13).

### 6.13.10 *Giglio* Policy—Implementation

After the *Giglio* policy was issued in 1996, both prosecuting offices and investigative agencies were required to develop plans to implement its directives. The Department directed that prosecuting offices' plans include provisions that require: open and timely communication between the prosecuting office and the investigative agency regarding the proper handling of potential impeachment information; maintaining the confidentiality and security of potential impeachment information; seeking *ex parte, in camera* review of potential impeachment information to determine whether it is necessary to disclose the information to the defense; and seeking protective orders of potential impeachment information disclosed to the defense.

### 6.13.12 Candid Conversation Between Prosecutor and Law Enforcement Witness

In accordance with the *Giglio* policy and the Ogden Memo, prosecutors should have "candid conversations" with federal law enforcement witnesses regarding potential impeachment information and other information in the public arena that would harm the case if improperly introduced during the case. With regard to state and local law enforcement witnesses, the Ogden Memo directs prosecutors to follow the law and practice in their circuit and district regarding their obligation to seek and disclose impeachment information.